[No. B118106. Second Dist., Div. Four. Jan. 7, 2000.]

FLORENCE WESTERN MEDICAL CLINIC et al., Plaintiffs and Respondents, v.
DIANA BONTA´, as Director, etc., et al., Defendants and Appellants.

494

**COUNSEL**

Bill Lockyer, Attorney General, Charlton G. Holland, Assistant Attorney General, John H. Sanders and Sandra L. Goldsmith, Deputy Attorneys General, for Defendants and Appellants.

Dennis E. Lee and Henry R. Fenton for Plaintiffs and Respondents.

OPINION

**HASTINGS, Acting P. J.**—The Director of the California Department of Health Services (Director) and the Department of Health Services (collectively the Department) appeal from a judgment for Florence Western Medical Clinic and the clinic's principal, Accie Mitchell, M.D. (collectively Florence). The judgment, rendered pursuant to Florence's petition brought pursuant to Code of Civil Procedure section 1094.5, determined Florence owed the Department nothing for claimed overpayment of Medi-Cal fees because the Department failed to comply with the time limitations of former Welfare and Institutions Code section 14171, subdivision (e).[1] We find no error and affirm the judgment.

FACTS

In 1983, the Department performed an audit of Florence's Medi-Cal practice. On October 19, 1984, the Department notified Florence that based on the audit it had determined Florence had been overpaid $385,119 for Medi-Cal services and requested repayment. Florence requested administrative review pursuant to section 14171.

A formal hearing commenced on October 1, 1985, and was conducted through October 4, at which time the hearing was suspended. Numerous continuances were granted until December 9, 1987, when the administrative law judge (ALJ) concluded the matter by declaring the record closed and submitted for decision.

On December 8, 1987, Florence filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1085. As a result of the petition, the administrative proceeding was stayed. However, the petition was dismissed in April 1990 for failure to prosecute. Administrative proceedings were reinstated on May 6, 1991, when the ALJ sent notice of a status conference to the parties. A settlement conference was held on September 12, 1991, but the matter did not settle.

On July 2, 1992, the ALJ sent the parties a "Notice of Re-Opening Record" and invited written argument on the applicability of two cases: *Grier v. Kizer* (1990) 219 Cal.App.3d 422 [268 Cal.Rptr. 244] and *Union of American Physicians & Dentists v. Kizer* (1990) 223 Cal.App.3d 490 [272

---

[1]All further statutory references will be to the Welfare and Institutions Code unless otherwise noted. Section 14171 was originally enacted in 1977 and has been amended on numerous occasions. (Historical and Statutory Notes, 74A West's Ann. Welf. & Inst. Code (2000 supp. pamp.) foll. § 14171, p. 353.) The version applicable to the facts here is that which was in effect on October 21, 1992, as reflected by amendments in 1991 (Stats. 1991 ch. 560, § 6, p. 2649), which we discuss later in this opinion.

Cal.Rptr. 886]. By this time, Florence had retained new counsel and copies of the hearing transcripts were requested. The ALJ denied the request, explaining that his "July 2, 1991 request involves a legal analysis which does not require a transcript of the proceedings."

On January 11, 1993, the ALJ issued a proposed "Final *Interlocutory* Decision," which denied the appeal. (Italics added.) On June 1, 1993, the Department's chief deputy director of operations adopted the proposed Final Interlocutory Decision.

On December 22, 1993, the ALJ issued a proposed decision which stated that the appeal should be granted in part and denied in part. It determined that the "final settlement with respect to the audit report issued on October 19, 1984, shall be recomputed. . . ." It then listed seven adjustments and concluded: "In all other respects the appeal is denied."

On December 24, 1993, the Department's assistant chief counsel wrote Florence's counsel that the proposed decision "does *not* constitute the final decision in this matter. The Director may adopt this Proposed Decision without change, prepare her own decision based upon the hearing record, or remand the matter for further hearing and decision." (Italics added.)

On August 11, 1994, the Department's chief deputy director of operations adopted the proposed decision as the final decision. However, notice of this determination was not immediately given to Florence. In a letter dated April 28, 1995, the Department notified Florence's counsel of the action taken on August 11, 1994, and enclosed a copy of the decision. The letter also invited Florence to contact staff counsel for the Department to discuss ". . . a mutually agreeable resolution of this matter." It also cautioned: "Any such discussion should occur prior to the deadline for appealing the Department's final decision, *which commences to run from the date of this letter*." (Italics added.)

On September 19, 1995, Florence exercised its right to appeal by filing a petition for writ of mandamus pursuant to Code of Civil Procedure section 1094.5. The first cause of action challenged "The Final Interlocutory Decision of June 1, 1993." It alleged that Florence had filed a written motion in the administrative action on September 30, 1992, which contended that the Department had failed to comply with the provisions of the Administrative Procedure Act and "that the Department was not owed any money because of the time limit provisions of Section 14171 of the Welfare and Institutions Code." It asserted that the Final Interlocutory Decision "constitutes a prejudicial abuse of discretion and an act exceeding the Department's jurisdiction

because the decision misapplies the law and the evidence does not support the findings."

The second cause of action challenged "The Proposed Decision of December 22, 1993," again asserting that the "Decision constitutes a prejudicial abuse of discretion and an act exceeding the Department's jurisdiction because the decision misapplies the law and the evidence does not support the findings." It also alleged: "[Florence] received notice of the adoption of the decision by a letter of April 28, 1995. . . . Attached to the letter was a 'Final Decision' dated August 11, 1994. . . . The Department's claim is barred by laches because of the long delays that have taken place in this case."

The Department demurred to the petition on the following grounds: the trial court lacked jurisdiction of the subject of the action (Code Civ. Proc., § 430.10, subd. (a)); the petition does not state facts sufficient to constitute a cause of action (Code Civ. Proc., § 430.10, subd. (e)); and the petition is uncertain (Code Civ. Proc., § 430.10, subd. (f)). The primary argument addressed by the Department related to the six-month statute of limitations contained within section 14171, subdivision (k), which states: "The final decision of the director shall be reviewable in accordance with Section 1094.5 of the Code of Civil Procedure within six months of the issuance of the director's final decision."[2] The Department asserted that the six months began to run on June 1, 1993, the date the chief deputy director of operations adopted the proposed Final Interlocutory Decision. It concluded that because the petition was not filed until September 19, 1995, it was filed too late.

The only other argument presented was very brief: "As set forth in the Statement of Facts, *supra*, the petition is replete with bald allegations of legal conclusions that are totally unsupported by any factual allegations. The only allegations that are arguably of a factual nature are those related to the method of sampling and extrapolation that was utilized in the audit. As set forth above, the Final Interlocutory Decision constituted the Director's final decision as to the issues related to these allegations and further review of these issues is barred by the applicable statute of limitations contained in Welfare and Institutions Code section 14171, subdivision (k). Moreover, even assuming, arguendo, that review of these issues were not barred by the statute of limitations, respondents submit that the allegations as to these issues are vague and ambiguous and insufficient to constitute a cause of action. Respondents further submit that the entire petition is uncertain in that it is ambiguous and unintelligible."

---

[2]This provision had previously resided in subdivisions (g) (1983) and (j) (1986 and 1988) and was transferred by amendment to subdivision (k) in 1991. (Stats. 1991, ch. 560, § 6, p. 2651.) It has since been returned to subdivision (j). (Historical & Statutory Notes, 74A West's Ann. Welf. & Inst. Code, *supra*, foll. § 14171, p. 353.)

Florence opposed the demurrer. With regard to the statute of limitations, it argued that the final decision was rendered on August 11, 1994, notice of this determination was given to Florence by letter dated April 28, 1995, and the petition was filed within six months from date of the letter. Relating to sufficiency of the pleading, Florence argued: "[T]he petition plainly stated facts sufficient to constitute causes of action under C.C.P. § 1094.5(b), in that petition stated that the findings were not supported by the evidence (Petition, page 4, lines 1-2; page 5, lines 3-6), and that Department has exceeded its jurisdiction and abused its discretion by not proceeding in the manner required by law, in that: 1) Department had failed to comply with the provisions of the Administrative Procedure Act by use of improper sampling and extrapolation methods (Petition, page 3, lines 3-7, page 4, lines 3-9), 2) the time limit provisions of Welfare and Institutions Code § 14171 barred Department's claim (Petition, page 3, lines 8-13), 3) laches applied because of Department's long delays (Petition, page 5, lines 7-18), and 4) Department denied Petitioners due process and right to counsel (Petition, page 5, lines 18-21)."

On September 4, 1997, the trial court overruled the demurrer, concluding as follows: "The 'Final Decision of the Director' as that term is used in WELFARE AND INSTITUTIONS Code Section 14171(k) was not made until August 11, 1994, and petitioner was not notified of that decision until April 28, 1995. The petition in this matter, filed on September 19, 1995 is therefore timely."

The court then granted a peremptory writ of mandate, finding as follows: "WELFARE & INSTITUTIONS Code Section 14171(e) eliminates the overpayment determined by respondent because of respondent's failure to adopt a final decision concerning payment within the time limitations imposed by WELFARE & INSTITUTIONS Code Section 14171 (f) and (g)."

On September 22, 1997, the trial court entered a judgment for Florence and ordered that a peremptory writ of mandamus issue requiring the Department to "set aside its Final Decision of August 11, 1994, and to make no claim upon [Florence] based upon the audit that was the subject of said Final Decision." Notice of entry of judgment was served on October 29, 1997, and notice of appeal was timely filed on December 9, 1997.

DISCUSSION

1. *The Statute of Limitations Relating to Filing of the Petition*

On appeal from the judgment, the Department first argues that Florence's petition was time-barred pursuant to former subdivision (k) of section 14171. We disagree.

As previously noted, the language of section 14171, former subdivision (k) provided that the *"final decision* of the director shall be reviewable . . . within six months of the issuance of the director's *final decision."* (Stats. 1991, ch. 560, § 6, p. 2561, italics added.) The fact that the Legislature used the term "final" in connection with section 14171 is consistent with the treatment rendered appeals contained within Code of Civil Procedure section 904.1, subdivision (a)(1), which provides: "An appeal . . . may be taken from any of the following: [¶] (1) From a judgment, *except* (A) *an interlocutory judgment*, other than as provided in paragraphs (8), (9), and (11) [none of which are applicable here]. . . ." (Italics added.) It must be presumed that the Legislature was aware of the distinction between the terms "final" and "interlocutory" when it enacted and amended section 14171. (*People v. Mobley* (1999) 72 Cal.App.4th 761, 784 [85 Cal.Rptr.2d 474].) Because subdivision (k) speaks only of "final" decisions, it is not reasonable to conclude that the Legislature intended that interlocutory decisions of the Director, even one titled Final Interlocutory Decision, be appealable prior to issuance of the actual "Final Decision" by the Director.

Citing *Westside Hospital v. Belshé* (1999) 69 Cal.App.4th 672 [81 Cal.Rptr.2d 768], the Department argues that for purposes of section 14171, former subdivision (k), the date of "issuance" of the Director's final decision is the date the Director "adopts" the final decision, not the date the Director gives notice of adoption of the final decision. This is directly contrary to the interpretation of former subdivision (k) indicated in the Department's letter of April 28, 1995, where it advised Florence that the time for appeal "commences to run from the date of this letter."

Notwithstanding the issue of estoppel raised by the letter, and the failure to raise this issue before the trial court, we conclude that one essential fact within *Westside Hospital* distinguishes it from this case: in *Westside Hospital*, the court found that the Department had given notice to the provider that the Director adopted the final decision within 30 days from that act, pursuant to the dictates of section 14171, subdivision (j).[3] (*Westside Hospital v. Belshé, supra*, 69 Cal.App.4th at p. 674.) Here, the final decision was adopted on August 11, 1994, but notice of adoption of the final decision was not given to Florence until the letter of April 28, 1995.

The interpretation advanced by the Department is simply not reasonable, as recognized in *HealthSmart Pacific Inc. v. Belshé* (1999) 72 Cal.App.4th 1202, 1207 [85 Cal.Rptr.2d 685]: "Furthermore, if no notice of the final

---

[3] " 'The department shall mail a copy of the adopted decision to all parties within 30 days of the date of adoption of the decision.' " (*Westside Hospital v. Belshé, supra*, 69 Cal.App.4th at pp. 675-676, fn. 2.)

decision is given, the limitations period could expire before the provider is aware there was a final decision." We agree with the opinion and reasoning in *HealthSmart*: "We conclude, contrary to the *Westside Hospital* decision, that 'adoption' and 'issuance' are not synonymous and under section 14171 the Director 'adopts' a proposed decision or 'adopts' a modification of a proposed decision, either of which on adoption becomes a final decision. A final decision is subject to judicial review by writ petition filed within six months after 'issuance,' in contrast to 'adoption,' of the final decision. Under section 14171, subdivision (e)(3)(B) and the regulations of the Department (Cal. Code Regs., tit. 22, § 51044, subd. (c)), 'issuance' of the final decision occurs on mailing by certified mail to the provider." (*HealthSmart Pacific Inc. v. Belshé, supra,* 72 Cal.App.4th at pp. 1207-1208.)

We conclude that the petition filed by Florence was timely and the trial court did not err in so concluding.

## 2. *The Statute of Limitations for Recovery of Payments*

The Department argues that the trial court erred in ruling on the petition that former subdivision (e) of section 14171 eliminates the claimed overpayment because the Department failed to adopt a final decision within the time limits set forth in former subdivisions (f) and (g) of section 14171.[4] Again, we disagree with the Department.

Section 14171, former subdivision (e) provided: "*The time limitations in subdivisions (f) and (g) for the impartial hearing and the final decisions are mandatory. If the department fails to conduct the hearing or to adopt a final decision thereon within the time limitations provided in subdivisions (f) and (g), the amount of any overpayment which is ultimately determined by the department to be due shall be reduced by 10 percent for each 30-day period, or portion thereof,* that the hearing or the decision, or both, are delayed beyond the time limitations provided in subdivisions (f) and (g). However, the time period shall be extended by either of the following: [¶] (1) Delay caused by a provider. [¶] (2) Extensions of time granted a provider at its sole request or at the joint request of the provider and the department."[5] (Stats. 1991, ch. 560, § 6, p. 2650, italics added.)

---

[4] As amended in 1997, former subdivision (e) was relettered to subdivision (d), former subdivision (f) was relettered to subdivision (e), and former subdivision (g) was relettered to subdivision (f). In either event, the outcome would be the same.

[5] Former subdivision (g) stated: "In the event the director intends to modify a proposed decision, on or before the 180th day following the closure of the record of the hearing for noninstitutional providers or the 300th day following the closure of the record of the hearing for institutional providers, the director shall provide written notice of his or her intention to the parties and shall afford the parties an opportunity to present oral and written

Section 14171, former subdivision (f) stated in pertinent part: "(3) Subject to subdivision (g), a final decision in a noninstitutional provider appeal shall be adopted within 180 days after the *closure of the record* of the impartial hearing, and a final decision in an institutional provider appeal shall be adopted within 300 days after the *closure of the record* of the impartial hearing."[6] (Stats. 1991, ch. 560, § 6, p. 2650, italics added.)

We turn first to a determination of whether the evidence establishes that the Department violated either or both of these time limitations. Various dates have been presented to us as the "hearing closure date": December 9, 1987, when the ALJ closed the record and submitted the matter for decision; July 2, 1992, when the ALJ executed a Notice of Re-Opening Record; and October 1, 1992, the date urged by the Department.[7] We need not determine which of these dates is in fact the closure date. The Director adopted the final decision on August 11, 1994. Utilizing the date argued by the Department, October 1, 1992, the final decision was adopted 679 days, or more than 22 months, after the hearing closure date. This significantly exceeds each time limitation in section 14171, former subdivision (f).

Turning to the matter of the penalty, section 14171, former subdivision (e) provides for a 10 percent penalty for each 30 days beyond the time period that the decision is adopted. This means that if the Director fails to adopt the final decision within 300 days from the date of closure, 100 percent of the amount claimed due is forfeited. Here, because the Director exceeded the 300-day limit, the trial court correctly ruled on the issue.[8]

---

argument. . . ." (Stats. 1991, ch. 560, § 6, pp. 2650-2651.) There is no evidence here that the Director gave notice of intention to modify a proposed decision; therefore, we construe this case under former subdivision (f).

[6]Although the provisions of the Welfare and Institutions Code concerning Medi-Cal (§ 14000 et seq.) do not define the terms "institutional provider" and "noninstitutional provider," an example of an institutional provider is a hospital. (*County of San Joaquin v. Belshé* (1995) 35 Cal.App.4th 6, 9 [41 Cal.Rptr.2d 267].) The parties do not directly address the issue. However, Florence utilizes the 180-day limitation period in its argument and the Department uses the 300-day limitation period.

[7]It is unclear from the record why the Department picks this date as the closing date. We infer from the evidence that this is the date that all briefing called for by the order of July 2, 1992, was completed. This was confirmed by counsel at oral argument.

[8]The Department argues that the trial court should not have addressed this issue because it was not raised in the petition. The argument lacks merit. The petition specifically alleges "that the Department was not owed any money because of the time limit provisions of Section 14171 of the Welfare and Institutions Code."

The Department also argues that the issue of penalty was not properly before the trial court because proceedings under Code of Civil Procedure section 1094.5 are limited to inquiring into the validity of the administrative decision. Subdivision (b) of Code of Civil Procedure section 1094.5 authorizes the trial court to consider whether there was any prejudicial abuse

Next, the Department argues that because the administrative hearings began on October 1, 1985, prior to the 1986 amendment to section 14171 adding the penalty provisions of subdivision (g) (Stats. 1986, ch. 562, § 2, p. 1987), those provisions should not be applied retroactively to preclude recovery. Again, we disagree.

A statute is applied retroactively only if it changes the legal consequences of an act *completed* before the effective date of the statute. A statute addressing procedures to be utilized in legal proceedings not yet concluded operates prospectively for acts to be performed after the effective date of the statute. The concept is explained in *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 288 [279 Cal.Rptr. 592, 807 P.2d 434]: "Even though applied to the prosecution of a crime committed before the law's effective date, a law addressing the conduct of trials still addresses conduct in the future. This is a principle that courts in this state have consistently recognized. Such a statute 'is not made retroactive merely because it draws upon facts existing prior to its enactment . . . . [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future.' [Citations.]"

It is clear from use of the phrase "closure of the record" in section 14171, former subdivision (f), that the Legislature intended the time limitation for adopting a final decision be triggered by conclusion of the administrative hearing, not the beginning. Again, utilizing the date urged by the Department, October 1, 1992, the court properly considered the provisions of section 14171 as they existed on that date, the 1991 version.

The Department also argues that the facts of this case fall within each of the two exceptions recognized within section 14171, former subdivision (e): "(1) Delay caused by a provider," and "(2) Extensions of time granted a provider at its sole request or at the joint request of the provider and the department." The Department argues that numerous delays and extensions of time should be attributed to Florence, including the stay resulting from the original petition filed on December 18, 1987. Except for the stay resulting from the original petition, the delays attributed to Florence relate to actions that occurred prior to December 9, 1987. Additionally, the original petition was dismissed in 1990 and administrative proceedings were reinstated

---

of discretion by the decisionmaker, and such abuse "is established if the respondent [Department in this case] has not proceeded in the manner required by law . . . ." Obviously, where the Department is attempting to collect alleged overpayments in violation of the provisions of section 14171, the provisions of Code of Civil Procedure section 1094.5 are appropriately asserted.

It is for each of these reasons that the trial court did not err in overruling the Department's demurrer on the asserted grounds that the petition failed to state facts which constituted causes of action.

in May 1991. There is nothing in the record to establish any causal relationship between the delay attributed to Florence and the failure of the Director to adopt a final decision for 679 days after closure of the record on October 1, 1992.

The Department also argues that Florence waived the time provisions of section 14171, former subdivision (f). In support of this argument, the Department cites a document entitled "WAIVER" executed on March 29, 1985, by Florence's initial attorney, J. Stanley Sanders. The document states: "Pursuant to a verbal agreement during the Telephone Conference on February 26, 1985, I hereby notify Philip Mc Kibbin, Administrative Law Judge, that I, as representative of the Provider agree to waive the time limitation of [Assembly Bill No.] 531 for Case No. SR5-1084-323X. This case is the appeal by Florence Western Medical Clinic of findings in a report by Audits and Investigation Division dated October 31, 1984."

■ " 'Waiver always rests upon intent. Waiver is the intentional relinquishment of a *known right after knowledge of the facts.*' [Citations.] The burden, moreover, is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver' [citation]." (*City of Ukiah v. Fones* (1966) 64 Cal.2d 104, 107-108 [48 Cal.Rptr. 865, 410 P.2d 369], italics added.)

■ We need not decide the issue of whether this waiver by counsel was binding on Florence, as argued by the parties. The waiver executed by counsel referenced a prior version of section 14171, subdivision (d), which provided: "For noninstitutional providers, the impartial hearing shall be conducted no later than 180 days after the issuance of the first statement of account status or demand for payment to the noninstitutional provider. A final decision shall be prepared within 30 days after the impartial hearing is conducted." (Stats. 1983, ch. 900, § 1, p. 3250.) The 1988 amendment to section 14171 first added the following language: "The time limitations in subdivisions (f) and (g) for the impartial hearing and the final decisions *are mandatory.*" (Stats. 1988, ch. 1079, § 1, p. 3492, italics added.) The same amendment added the penalty provisions at issue. ■ "Failure to provide for a consequence or penalty for noncompliance strongly suggests that the provision is merely directory. [Citation.]" (*Meridian Ocean Systems, Inc. v. State Lands Com.* (1990) 222 Cal.App.3d 153, 168 [271 Cal.Rptr. 445].) There is no evidence to support a conclusion that counsel knowingly waived

the rights of Florence to enforce the provisions of section 14171 enacted after the waiver was signed.[9]

Finally, the Department argues that the trial court erred in denying its request to file an answer and memorandum of points and authorities in opposition to the petition after overruling its demurrer. ■ Unlike most civil actions, in a Code of Civil Procedure section 1094.5 proceeding, the trial court has discretion to deny respondent the right to file an answer if none was filed concurrently with the demurrer. (Code Civ. Proc., § 1089; *Rhyne v. Municipal Court* (1980) 113 Cal.App.3d 807, 819 [170 Cal.Rptr. 312]; Cal. Administrative Mandamus (Cont.Ed.Bar 2d ed. 1989) Pleadings in Response to Petition, § 10.1, p. 338.)

■ The Department argues that as a state agency it should be allowed, as a "matter of judicial economy and proper utilization of state resources," to file an answer after a demurrer. It also argues that requiring a state entity to file an answer at the same time it files a demurrer "would result in a tremendous waste of State resources." It concludes that by failing to allow the Department to answer the petition, the trial court essentially granted Florence a default in violation of Code of Civil Procedure section 1088. That statute provides in relevant part: "The writ cannot be granted by default. The case must be heard by the court, whether the adverse party appears or not." (*Ibid.*) The problem with the Department's argument is that it offers no factual basis to demonstrate abuse of discretion by the trial court.

The record demonstrates that the trial court conducted a hearing with counsel for both sides present and participating, on issues specifically addressed in the pleadings and points and authorities filed by the Department and Florence. We are not advised by the Department in its briefing on appeal what issues it would have addressed had it been given leave to file the answer and how those issues may have changed the outcome of the hearing. Thus, the Department has failed to carry its burden on appeal. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932]; *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 217 [188 Cal.Rptr. 115, 655 P.2d 317].)

---

[9]The Department also argues that the statement of decision by the trial court does not support the judgment. The argument focuses on the merits of the Final Interlocutory Decision issued on June 1, 1993, and the final decision issued on August 11, 1994. It presumes that we agree with its arguments that the trial court determination regarding the time limitations contained within section 14171, subdivision (f) was incorrect and that the subject of the penalty is not a proper basis for review under Code of Civil Procedure section 1094.5. Because we have concluded otherwise, we need not reach the merits of this argument.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Florence.

Curry, J., and Dau, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.