[No. C047027. Third Dist. Dec. 20, 2005.]

ST. FRANCIS MEDICAL CENTER, Plaintiff and Appellant, v.
SANDRA SHEWRY, as Director, etc., Defendant and Respondent.

**COUNSEL**

Hooper, Lundy & Bookman, Lloyd A. Bookman and Perri Lyn Cohen for Plaintiff and Appellant.

Bill Lockyer, Attorney General, James Humes, Chief Assistant Attorney General, Thomas R. Yanger, Assistant Attorney General, Joseph O. Egan, Darryl F. Mansfield and G. Mateo Munoz, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**BLEASE, Acting P. J.**—St. Francis Medical Center (St. Francis) appeals from the judgment that denied its petition for a writ of administrative mandamus (Code Civ. Proc., § 1094.5), which sought to set aside a final decision of the Director of the Department of Health Services (Department).

The Department's decision reversed the proposed decision of an administrative law judge (ALJ) and found that St. Francis owed $1,742,632 in overpayments for inpatient services rendered by St. Francis's neonatal intensive care unit (NICU) for the fiscal years ending June 30, 1994, 1995 and 1996.

St. Francis contends the ALJ's proposed decision, which found no overpayment was owed, should be deemed the final decision of the Department for violation of Government Code section 11517, a provision of the Administrative Procedures Act (APA). The Department concedes that the APA generally applies to the agency, but argues that in this case section 11517 is trumped by the more specific provisions of Welfare and Institutions Code section 14171.[1]

 Section 11517 provides that an agency must act on an administrative appeal within 100 days of the receipt of a proposed decision from the ALJ. (§ 11517, subd. (c)(2).) If the agency fails to act or, as here, fails to issue a

---

[1] In the interests of brevity and where not confusing, we refer to Government Code section 11517 as section 11517 and Welfare and Institutions Code section 14171 as section 14171.

final decision within 100 days of the act of rejection of the proposed decision, it "shall be deemed adopted by the agency." (§ 11517, subd. (c)(2); *id.*, subd. (c)(2)(E)(iv).) We refer to this rule as the 100-day rule.[2]

Section 14171 provides that a final agency decision shall be issued within 420 days of the closure of the record of the administrative hearing involving an institutional provider. (§ 14171, subd. (f).) The remedy for failure to do so is a reduction in the "amount of any overpayment which is ultimately determined by the department to be due . . . ." (§ 14171, subd. (d).) We shall refer to this as the 420-day rule.

The agency claims the two rules are in conflict and that section 14171 applies as the more specific rule. We disagree.

The two rules serve different purposes, run from different starting dates and have different consequences. The 100-day rule runs from the date of receipt or rejection of the ALJ decision. It establishes whether a proposed ALJ decision shall be deemed the final decision of the agency. The 420-day rule runs from the closure of the record before the ALJ. It affects the amount of any overpayment.

■ We will conclude that since the Department failed to file a final decision within 100 days of its rejection of the proposed ALJ decision, it is deemed adopted by the Department.

We shall reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Medi-Cal is California's health care program for qualified indigent persons (Welf. & Inst. Code, § 14000 et seq.; Cal. Code Regs., tit. 22, § 50000 et seq.) and is administered by the Department. (Welf. & Inst. Code, § 14203.) The state reimburses participating health care providers for covered services furnished to eligible Medi-Cal beneficiaries. (Welf. & Inst. Code, § 14131 et seq.)

In 1983, St. Francis entered into a negotiated selective provider contract with the Department (No. 82-80211; Welf. & Inst. Code, § 14081 et seq. [governing Medi-Cal selective provider contracts]), which authorizes

---

[2] Calling this a 100-day rule is somewhat of a misnomer. In the case where the agency acts to reject a proposed ALJ decision within 100 days of its receipt it has an additional 100 days within which to file its final decision, for a maximum of 200 days. In this case, the Department's rejection of the ALJ decision occurred on the same day as its receipt, leaving the Department with 100 days in which to file its final decision.

St. Francis to bill Medi-Cal one patient day for services provided to a mother and her baby when both are inpatients on the same day. This rule is referred to as the "common-day" rule. The contract provides an exception to this rule for a newborn receiving intensive care. In that case, St. Francis may bill a separate day of service for each day the newborn receives such care. Additionally, the contract provides a higher rate of payment for NICU services.

On November 9, 1999, the audits section of the Department issued a "Report on the NICU Billing Review" for the fiscal years ending June 30, 1994, through June 30, 1996. The report included a demand for $2,228,572 for alleged overpayments. The report explains six adjustments. Three adjustments seek to recover monies for services provided at a staffing level allegedly lower than the NICU service required by the contract[3] and for exceeding the licensed NICU capacity. The other three adjustments seek to recover overpayments for alleged incorrect billing of mother and baby under the common-day rule.

On December 23, 1999, St. Francis filed an administrative appeal challenging the billing review. It claimed the audit was untimely, the Medi-Cal contract did not require that neonatal intensive care services be provided in the licensed NICU in order to be reimbursed at the NICU rate, and regulatory staffing-level requirements do not govern the amount of payment for NICU services set forth in the Medi-Cal contract.

The matter came on for formal hearing before Michael A. D'Onofrio, an ALJ for the Department. During the hearing, the Department agreed its original overpayment determination was erroneous and should be reduced to $1,742,632. The record was held open at the conclusion of the oral hearing for the preparation of a transcript and the submission of post hearing briefs. The record was closed on December 15, 2000.

On October 23, 2001, Judge D'Onofrio issued a proposed decision. He granted the appeal with regard to the NICU staffing level and license capacity disputes and found no overpayment was due. The same day, the Department's Chief ALJ advised St. Francis that the proposed decision was rejected and that a final decision would be issued based on a complete review of the record. The notice invited the parties to submit additional arguments, which were received on November 16, 2001. After reviewing the record, the transcript of the hearing, and the parties' arguments, the Department's final

---

[3] Department regulations require that NICU services be staffed at a ratio of one registered nurse for two or fewer intensive care infants. (Cal. Code Regs., tit. 22, § 70485, subd. (d).) The Department claims this regulatory standard is incorporated into the Medi-Cal provider contract.

decision was issued denying the appeal in its entirety. It was signed by the Chief ALJ and mailed on February 13, 2002.[4]

St. Francis filed a petition for writ of mandamus (Code Civ. Proc., § 1094.5), seeking review of the Department's final decision prohibiting the Department from recouping any portion of the alleged overpayment. The trial court denied the petition and issued judgment in favor of the Department.

St. Francis appeals from the judgment.

## DISCUSSION

The Department concedes the 100-day rule of section 11517, subdivision (c)(2)(E)(iv) was violated. Rather, it claims section 11517 is in conflict with the provisions of section 14171, and that section 14171 prevails as the more specific law.

Section 11517 is made applicable to the Department, with exceptions not here relevant, by Health & Safety Code section 100171.[5] It requires that an agency must act on an administrative appeal within 100 days of the receipt of a proposed decision from the ALJ. (§ 11517, subd. (c)(2); see fn. 2, *post.*) If the agency fails to act or, as here, fails to issue a final decision within 100 days of the act of rejection of the proposed ALJ decision, the ALJ decision "shall be deemed adopted by the agency." (*Id.*, subd. (c)(2)(E).)[6]

---

[4] Although the notices of Department action sent to St. Francis were signed by the Chief ALJ, they apparently were issued under the authority of the Director pursuant to California Code of Regulations, title 22, section 51044. The parties do not claim otherwise.

[5] Section 100171 provides in pertinent part: "Notwithstanding any other provision of law, whenever the department is authorized or required . . . to conduct an adjudicative hearing leading to a final decision of the director or the department, the following shall apply: [¶] (a) The proceeding shall be conducted pursuant to the administrative adjudication provisions of . . . Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, except as specified in this section. . . . [¶] (e) The specific timelines specified in Section 11517 of the Government Code shall not apply to any adjudicative hearing conducted by the department to the extent that the department has, by regulation, specified different timelines for the particular type of hearing at issue."

In its statement of decision denying the petition, the trial court took the view that California Code of Regulations, title 22, section 51016, subdivision (a)(7), constitutes a regulation within the meaning of Health & Safety Code section 100171, subdivision (e). We do not share the court's view, and the Department does not argue the point on appeal.

While it is true that subdivision (e) of Health & Safety Code section 100171 authorizes the Department to provide a different timeline by regulation, the Department has not identified any such regulation and we have found none.

[6] Section 11517, subdivision (c) provides as follows:

"(c)(2) Within 100 days of receipt by the agency of the administrative law judge's proposed decision, the agency may act as prescribed in subparagraphs (A) to (E), inclusive. *If the agency fails to act as prescribed in subparagraphs (A) to (E), inclusive, within 100 days of receipt of*

In this case the receipt and rejection of the proposed ALJ decision occurred on the same day. Accordingly, it was incumbent upon the Department to file its decision within 100 days of the rejection.

The ALJ issued a proposed decision on October 23, 2001, and the Department received and rejected it the same day.[7] The Department issued its final decision on February 13, 2002, (*Florence Western Medical Clinic v. Bonta* (2000) 77 Cal.App.4th 493, 501 [91 Cal.Rptr.2d 609] [final decision is issued upon mailing to the provider]), 113 days after the proposed decision was rejected by the Department. For these reasons the final decision was issued beyond the 100-day limit of section 11517, subdivision (c)(2)(E)(iv).

However, the Department contends the limit specified in section 11517 is inapplicable because the more specific provisions of section 14171 govern administrative appeals involving audits and examination findings.[8] That is the case only if the provisions are in conflict. We will conclude they are not.

The Department relies on the special/general rule. "[W]here [a] general statute standing alone would include the same matter as the special act, and

---

*the proposed decision, the proposed decision shall be deemed adopted by the agency.* The agency may do any of the following . . . [¶] (E) Reject the proposed decision, and decide the case upon the record, including the transcript, or upon an agreed statement of the parties, with or without taking additional evidence. By stipulation of the parties, the agency may decide the case upon the record without including the transcript. If the agency acts pursuant to this subparagraph, all of the following provisions apply:

"(i) A copy of the record shall be made available to the parties. The agency may require payment of fees covering direct costs of making the copy.

"(ii) The agency itself shall not decide any case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself. If additional oral evidence is introduced before the agency itself, no agency member may vote unless the member heard the additional oral evidence.

"(iii) The authority of the agency itself to decide the case under this subdivision includes authority to decide some but not all issues in the case.

"(iv) *If the agency elects to proceed under this subparagraph, the agency shall issue its final decision not later than 100 days after rejection of the proposed decision.* If the agency elects to proceed under this subparagraph, and has ordered a transcript of the proceedings before the administrative law judge, the agency shall issue its final decision not later than 100 days after receipt of the transcript. If the agency finds that a further delay is required by special circumstance, it shall issue an order delaying the decision for no more than 30 days and specifying the reasons therefor. The order shall be subject to judicial review pursuant to Section 11523." (Italics added.)

[7] In light of the Department's position on appeal that section 11517 is inapplicable, we find it curious that its rejection notice stated that the proposed decision "is hereby rejected pursuant to Government Code section 11517(c)."

[8] The Department also suggests that section 14171, subdivision (a), authorizes the Director of a Department to establish administrative review procedures by regulation, at variance with the 100-day rule, for matters specified by sections 10722 and 14170. Even if we assume this provision applies to the subject matter of this case, the Department has not identified any such regulation and we have found none.

thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment." (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].)

Citing to *Lacy v. Orr* (1969) 276 Cal.App.2d 198, 201 [81 Cal.Rptr. 276], the Department argues that the APA is a general law relating to procedures for administrative hearings which must yield to a special act where there is a variance. This principle does not advance the Department's position because the 420-day rule and 100-day rule do not stand in the relative position of special and general statutes and the Department has made no effort to show there is a conflict between them.

Whether a specific statute supplants a general statute is a question of legislative intent. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 125 [41 Cal.Rptr.2d 295].) In determining intent, we first look to the language of the statute. (*Medical Board v. Superior Court* (2001) 88 Cal.App.4th 1001, 1013 [106 Cal.Rptr.2d 381]; *Arbuckle-College City Fire Protection Dist. v. County of Colusa* (2003) 105 Cal.App.4th 1155, 1166 [130 Cal.Rptr.2d 182]; Code Civ. Proc., § 1859; 2B Sutherland, Statutory Construction (6th ed. 2000) § 51.05, pp. 247–248, 256–257, 259.)

Section 14171 specifies a time limit for issuing a final decision and the penalty for failing to comply with it. As pertinent here, subdivision (f) directs an agency director to issue a final decision "on or before . . . the 420th day following closure of the record of the hearing for institutional providers . . . ." Subdivision (d) makes this time limit mandatory and establishes a penalty for failing to comply with it. It provides that "[i]f the department fails to conduct the hearing or to adopt a final decision thereon within the time limitations provided in subdivisions . . . (f), the amount of any overpayment which is ultimately determined by the department to be due shall be reduced by 10 percent for each 30-day period, or portion thereof, that the hearing or the decision, or both, are delayed beyond the time limitations provided in subdivisions . . . (f)."

Section 14171 is obviously designed to speed up the process of decision not only by the agency but by the ALJ as well. In this case the administrative record was closed on December 15, 2000, and the Department issued a final decision on February 13, 2002, 425 days after the record closed. Because it was five days late, the rule requires that the amount of any overpayment be reduced by 10 percent.

The two rules operate within different timeframes and use different means of enforcement. The 100-day rule starts upon the receipt of the ALJ's proposed decision while the 420-day rule starts with the closure of the

administrative record. The 100-day rule operates directly on the ALJ's proposed decision, which is deemed adopted if the Department fails to act or issue a final decision within the statutory time period. The 420-day rule operates on the final decision and establishes a penalty for failure to meet its time requirement, a reduction in the provider's liability to the state.[9] Although both rules involve time limits that affect a final decision of the Department, neither rule interferes with the operation of the other. They operate concurrently to ensure that the administrative process moves in a reasonably timely manner.

The trial court erred in finding to the contrary.

### DISPOSITION

The judgment is reversed. St. Francis is awarded its costs on appeal. (Cal. Rules of Court, rule 27(a)(1).)

Davis, J., and Morrison, J., concurred.

---

[9] As noted, section 14171, subdivision (d) provides that an overpayment must be reduced 10 percent for each 30-day period the hearing or decision is delayed beyond the statutory time limitations. Thus, a delay of 10 months results in a 100 percent reduction of the overpayment. This rule operates in effect as a statute of limitations affecting the recovery of payments from providers. (See *Florence Western Medical Clinic v. Bonta, supra,* 77 Cal.App.4th at p. 501.)