[No. C056576. Third Dist. Sept. 8, 2009.]

KAREN MATUS, Individually and as Trustee, etc., et al., Plaintiffs and Respondents, v.
BOARD OF ADMINISTRATION, CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM et al., Defendants and Appellants.

598

**COUNSEL**

Steptoe & Johnson and Bennett Evan Cooper for Defendants and Appellants.

Roberti Jensen, John Michael Jensen, David A. Roberti and Tessa Mar King for Plaintiffs and Respondents.

Daniel M. Lindsay and Suzanne L. Branine for California Correctional Peace Officers Association as Amicus Curiae on behalf of Plaintiffs and Respondents.

## Opinion

**HULL, J.**—An administrative law judge ruled that defendant California Public Employees' Retirement System (CalPERS) had underpaid retirement benefits to Clarence Alexander and his widow by more than $3 million (plus interest). CalPERS rejected this proposed decision and opted to decide the case itself upon the record, including the transcript. Plaintiffs, who are pursuing the claim on behalf of Alexander's heirs, subsequently filed a petition for writ of mandate, asserting that the proposed decision must be deemed adopted because CalPERS failed to order a transcript within 100 days of rejecting the proposed decision and did not timely issue its own decision. The trial court agreed that CalPERS had violated the timelines established by the Administrative Procedure Act (Gov. Code, § 11400 et seq.), specifically, Government Code section 11517, and issued the requested relief. (Unspecified section references that follow are to the Government Code.)

On appeal, CalPERS asserts that the trial court misconstrued the timelines and that its actions were timely. We affirm the judgment.

## Section 11517

In order to set the context for this appeal, we outline the relevant provisions of section 11517, the statute that establishes the procedures for deciding contested administrative cases.

Under these provisions, cases may be heard before an administrative law judge (ALJ) or an agency. (§ 11517, subds. (a), (b).) If an agency hears the matter, it must issue its decision within 100 days of submission of the case. (§ 11517, subd. (b)(3).) If the matter is heard before an ALJ, a series of timelines come into play, and it is these timeframes that are critical to this appeal.

Within 30 days after the case is submitted, the ALJ must prepare a proposed decision "in a form that may be adopted by the agency as the final decision in the case." (§ 11517, subd. (c)(1).) Within 100 days of receipt by

the agency of the ALJ's proposed decision, the agency may act in one of five ways: adopt the proposed decision in its entirety (§ 11517, subd. (c)(2)(A)), reduce or mitigate the penalty but otherwise adopt the decision (§ 11517, subd. (c)(2)(B)), make technical or minor changes to the decision (§ 11517, subd. (c)(2)(C)), reject the proposed decision and refer the matter back to the ALJ (§ 11517, subd. (c)(2)(D)), or reject the proposed decision "and decide the case upon the record, include the transcript, or upon an agreed statement of the parties, with or without taking additional evidence" (§ 11517, subd. (c)(2)(E)).

If an agency elects this last option, "the agency shall issue its final decision not later than 100 days after rejection of the proposed decision. If the agency elects to proceed under this subparagraph, and has ordered a transcript of the proceedings before the administrative law judge, the agency shall issue its final decision not later than 100 days after receipt of the transcript. If the agency finds that a further delay is required by special circumstance, it shall issue an order delaying the decision for no more than 30 days and specifying the reasons therefor . . . ." (§ 11517, subd. (c)(2)(E)(iv).)

If "within 100 days of receipt of the proposed decision" the agency fails to act in the manner outlined for any one of the five possible options (adoption, mitigation of penalty, minor changes, reference to an ALJ, or deciding the matter itself), "the proposed decision shall be deemed adopted by the agency." (§ 11517, subd. (c)(2).)

We will discuss these provisions in greater length later in our opinion, but turn now to the chronology of events in the case before us.

### FACTS AND PROCEEDINGS

As the trial court described, "[t]his action arises out of a dispute regarding the amount of retirement benefits payable by the Legislators' Retirement System (LRS) to Frances Alexander as the surviving spouse of Clarence Alexander. Clarence Alexander started working for the State of California in 1947. He retired in 1969 as the Secretary of the California Senate with 22.228 years of service credited under the LRS. Upon his retirement, Mr. Alexander received a monthly retirement allowance until his death in 1998 at which time, a monthly death benefit became payable to his then surviving spouse, Frances Alexander. Mrs. Alexander continued to receive a monthly survivor benefit until her death in late 2005."

In 2003, Mrs. Alexander learned that CalPERS might have miscalculated her husband's retirement benefits. She filed a claim, CalPERS denied it, and she appealed. "Since her death, Mrs. Alexander's appeal has been pursued by the Alexander Family Trust and Karen Matus, individually and in her representative capacities as trustee of the Alexander Family Trust, executor of the Estate of Mrs. Alexander, and personal representative of Mr. and Mrs. Alexander."

After an evidentiary hearing, an ALJ issued a proposed decision in favor of Mrs. Alexander, awarding her $3,579,578 plus 6 percent interest, a total of more than $6 million. CalPERS received this proposed decision on May 4, 2006, and on June 21, 2006, well within the 100-day limit required by section 11517, subdivision (c)(2), voted to reject the proposed decision and decide the matter itself based on the administrative record, including the transcripts.

CalPERS also decided to seek an opinion from the Legislative Counsel about the relevant retirement formulas. However, it did not formulate its request and present it to a legislator until October 3, 2006. Because it was not sure when the legislator would be able to request that opinion or when the opinion would be issued, and because it knew that the 100-day period for a decision would begin to run from the date it received the transcript of the administrative proceedings, CalPERS intentionally delayed ordering the transcript.

On October 3, 2006, five months after it had received the ALJ's proposed decision and nearly four months after rejecting that decision, CalPERS ordered a transcript, but mistakenly directed its request to the Office of Administrative Hearings (OAH). Transcripts were to be ordered from the reporter, not OAH, and it is unclear why this mixup occurred. In fact, the ALJ had notified the parties at the conclusion of the hearing that transcripts could be ordered from the reporter and he had given them the relevant contact information. The record indicates that both plaintiffs and CalPERS communicated with the reporter between May and August of 2006. For whatever reason, CalPERS did not order the transcript from the reporter until November 6, 2006.

CalPERS received the transcript one week later, on November 13, 2006, an event that the agency believed triggered the start of the 100-day period for its decision, which would be due by February 21, 2007. CalPERS could not get the matter onto its December meeting agenda, and there was no regularly scheduled meeting in January. Due to holidays, the February meeting was

scheduled for February 22, 101 days after the transcript was received. The Board therefore passed a resolution on December 20, 2006, citing these special circumstances and ordering a delay of its decision by 30 days as permitted under section 11517, subdivision (c)(2)(E)(iv).

Plaintiffs filed a petition for writ of mandate, seeking a stay of proceedings and asserting that the proposed decision must be deemed adopted. They argued that while an agency has 100 days from the receipt of a transcript to issue its decision (and may under proper circumstances be entitled to an additional 30 days), the agency cannot delay ordering the transcripts indefinitely. They asserted that the time limits outlined under section 11517 require an agency to order the transcript within the initial 100-day period and that CalPERS's failure to meet these timelines meant that the ALJ's proposed decision must be deemed adopted.

The trial court agreed. The court reviewed the language of section 11517, subdivision (c)(2)(E)(iv) and determined that this provision contains two alternative 100-day provisions. An agency must issue its final decision "not later than 100 days after rejection of the proposed decision" *or*, if the agency "has ordered a transcript of the proceedings," within 100 days of the receipt of that transcript.

The court then turned to the question of when a transcript must be ordered. It concluded that while a transcript did not have to be ordered before an agency decided whether to accept, modify, or reject a proposed decision, the grammar of the statute and the legislative intent did not give an agency an indefinite period of time of "administrative limbo" in which to order a transcript. The court stated: "In the Court's view, the Legislature intended agencies to order a transcript no later than 100 days after the rejection of the proposed decision. This conclusion is based on the language and structure of the first two sentences in subdivision (c)(2)(E)(iv). The first sentence establishes the default rule: if the agency elects to decide the case upon the record, then the agency must issue its final decision not later than 100 days after rejection of the proposed decision. The very next sentence establishes an exception to the default rule, which applies only if the agency 'has ordered' a transcript of the proceedings. This structure suggests the Legislature intended the conditional phrase—if the agency 'has ordered' a transcript—to be judged with reference to the 100-day period described in the preceding sentence. Construed in this manner, if the agency elects to decide the case upon the

record, and the agency has not ordered a transcript, the agency is required to issue its final decision not later than 100 days after rejection of the proposed decision. Alternatively, if at any time during this 100-day period the agency 'has ordered' a transcript of the proceedings then the second sentence in subdivision (c)(2)(E)(iv) applies and the agency shall have until 100 days after receipt of the transcript to issue its final decision on the record."

The court determined that CalPERS had violated these time limitations by failing to order a transcript in a timely manner and failing to issue its decision within 100 days after rejecting the proposed decision. (It also held that "even if the statute were construed under a reasonableness standard, the Court would find that CalPERS['s] dilatory actions were not reasonable and violated that statute.")

Relying on a case from this court, *St. Francis Medical Center v. Shewry* (2005) 134 Cal.App.4th 1556 [36 Cal.Rptr.3d 895] (*St. Francis*), the court concluded that the time requirements of section 11517, subdivision (c)(2)(E)(iv) were mandatory and that CalPERS's failure to meet them meant that the ALJ's decision was deemed adopted as a matter of law.

CalPERS appeals.

## DISCUSSION

CalPERS contends that it complied with the timeframe outlined in section 11517, and that the statute does not contemplate that a transcript be ordered within any specific period. It also argues that any lapse on its part did not deprive it of the ability to hear the case and issue a decision after this period of time had passed. We disagree.

■ "Our analysis commences with the premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citation.] ' "Our first step [in determining legislative intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning." ' [Citations.] ' "In analyzing the statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . ." ' [Citation.] 'Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction.' [Citations.]" (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641].) "[I]f the

statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs. [Citations.] If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such situations, we strive to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purposes. [Citation.] We will avoid any interpretation that would lead to absurd consequences." (*People v. Walker* (2002) 29 Cal.4th 577, 581 [128 Cal.Rptr.2d 75, 59 P.3d 150].)

■ As noted, this appeal centers on section 11517, subdivision (c)(2)(E)(iv): "If the agency elects to proceed under this subparagraph [i.e., rejecting the proposed decision and deciding the case upon the record, including the transcript], the agency shall issue its final decision not later than 100 days after rejection of the proposed decision. If the agency elects to proceed under this subparagraph, and has ordered a transcript of the proceedings before the administrative law judge, the agency shall issue its final decision not later than 100 days after receipt of the transcript." This subdivision also authorizes a 30-day extension for issuing a decision if "a further delay is required by special circumstance[s] . . . ." (§ 11517, subd. (c)(2)(E)(iv).)

■ The first sentence of this subdivision clearly and unambiguously provides that if an agency opts to reject the ALJ's proposed decision and decide the case upon the record, it must issue its decision within 100 days. The second sentence offers an alternative deadline: If an agency elects to reject the ALJ's decision and "has ordered a transcript of the proceedings before the administrative law judge," its decision must issue no later than 100 days after receiving the transcript. This provision is only sensible. If, for example, an agency rejected an ALJ's decision, ordered a transcript, and received it on day 99, the first sentence of section 11517, subdivision (c)(2)(E)(iv) would require a decision no later than the next day, clearly not a practical situation. The second sentence extends this period of time so that delays in the preparation of the transcript do not work against the agency. The agency has 100 days from receipt of the transcript to issue its decision.

■ The question is whether, having opted to reject the ALJ's proposed decision and decide the case upon the record, the agency is under any time constraints in ordering the transcript. We conclude that under section 11517, the agency must order the transcript within 100 days of rejecting the

proposed decision in order to avoid having the proposed decision deemed adopted. We explain.

■ "In construing statutes, the use of verb tense by the Legislature is considered significant." (*Hughes v. Board of Architectural Examiners, supra,* 17 Cal.4th at p. 776.) Here, the grammar of section 11517, subdivision (c)(2)(E)(iv) is telling. The statute unambiguously states that an agency that decides to reject an ALJ's decision and decide the case upon the record, including the transcript, must "issue its final decision not later than 100 days after rejection of the proposed decision." It then continues: "If the agency elects to proceed under this subparagraph, *and has ordered a transcript of the proceedings* before the administrative law judge, the agency shall issue its final decision not later than 100 days after receipt of the transcript." (*Ibid.,* italics added.)

The phrase "has ordered a transcript of the proceedings" is in the present perfect tense, "a tense which indicates either that an action was completed at some point in the past . . . or that the action began in the past and continues up to and including the present" (*Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 363 [19 Cal.Rptr.3d 29]).

■ Under the timeframe outlined in this statutory scheme, an agency must issue its decision within 100 days of rejecting the proposed decision. If, however, the agency opts to reject the proposed decision *and* has ordered a transcript of the proceedings, this deadline is extended to 100 days after receipt of the transcript. In other words, the additional 100-day period comes into play *only if* the agency elected to proceed with the transcript *and* the agency "has ordered a transcript of the proceedings." If no transcript has been ordered, there is no basis for extending the 100-day period in which the agency must issue its decision. In order for the extension to come into play, the agency must have ordered the transcript within 100 days of rejecting the ALJ's decision.

■ Thus, under these provisions, the following deadlines apply:

1. Within 100 days of receiving the ALJ's proposed decision an agency must decide whether to adopt, mitigate, modify or reject the proposed decision. (§ 11517, subd. (c)(2).)

2. If an agency opts to reject the ALJ's decision, it must issue its decision within 100 days of its rejection. If the agency is going to order a transcript, it must do so before this 100-day period expires, and it is then given 100 days from the receipt of the transcript to issue its final decision. (§ 11517, subd. (c)(2)(E)(iv).)

3. A final decision may be delayed for no more than 30 days if special circumstances require. (§ 11517, subd. (c)(2)(E)(iv).)

This timeframe reflects the desire for a timely hearing and resolution of administrative proceedings. Under CalPERS's theory (namely, that there is no time limit for ordering a transcript of proceedings), an agency could reject a proposed decision within 100 days of its receipt but then do nothing else. It could sit on a case for an indeterminate period of time before ordering a transcript and starting the 100-day period for issuing a decision.

CalPERS urges that even if it was required to order the transcript of the proceedings within 100 days of rejecting the ALJ's decision, this deadline is directory, not mandatory, and the failure to act within the requisite timeframe did not divest it of the authority to hear the matter. We disagree.

■ "The word 'mandatory' may be used in a statute to refer to a duty that a governmental entity is required to perform as opposed to a power that it may, but need not exercise. As a general rule, however, a ' "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory," but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' [Citation.] If the action is invalidated, the requirement will be termed 'mandatory.' If not, it is 'directory' only." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1145 [43 Cal.Rptr.2d 693, 899 P.2d 79].)

■ "Courts determine whether an obligatory statutory provision should be given mandatory or directory effect by ascertaining the legislative intent. [Citation.] Of course, when the Legislature imposes particular statutory requirements, it generally does not intend for them to be disregarded. . . . [¶] There is ' "no simple, mechanical test" ' for making this determination.

[Citation.] Invariably, 'courts look to the procedure's purpose or function. If the procedure is essential to promote the statutory design, it is "mandatory" and noncompliance has an invalidating effect. If not, it is directory.' [Citation.]" (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 924 [76 Cal.Rptr.3d 483, 182 P.3d 1027].) "In some cases focus has been directed at the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment." (*Edwards v. Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365].)

When the Legislature "has specified a time within which an administrative board is to render a decision, that time limit may be mandatory in the obligatory sense, but this 'does not necessarily mean that a failure to comply with its provisions causes a loss of jurisdiction.' " (*California Correctional Peace Officers Assn. v. State Personnel Bd., supra*, 10 Cal.4th at p. 1147.) "Time limits are usually deemed to be directory unless the Legislature clearly expresses a contrary intent." (*Id.* at p. 1145.) For example, if the statute attaches consequences or penalties to the failure to observe time limits, the statute is construed mandatory. (*County of Sacramento v. Insurance Co. of the West* (1983) 139 Cal.App.3d 561, 565–566 [188 Cal.Rptr. 736]; see also *Edwards v. Steele, supra*, 25 Cal.3d at p. 410.)

That is precisely the situation here. Section 11517, subdivision (c)(2) provides: "Within 100 days of receipt by the agency of the administrative law judge's proposed decision, the agency may act as prescribed in subparagraphs (A) to (E), inclusive. [Subparagraphs (A) to (E) outline the agency's options, ranging from adopting the proposed decision in its entirety to rejecting it and deciding the case on the record.] If the agency fails to act as prescribed in subparagraphs (A) to (E), inclusive, within 100 days of receipt of the proposed decision, the proposed decision shall be deemed adopted by the agency."

Subparagraphs (A) through (D) of section 11517, subdivision (c)(2) outline various options for action and impose no additional time constraints. Subparagraph (E) of section 11517, subdivision (c)(2), however, establishes detailed procedures for an agency to follow if it decides to reject the proposed decision and decide the case upon the record, including the transcript. Subparagraph (E) specifies that "[i]f the agency acts pursuant to this subparagraph, all of the following provisions [i.e., (i)–(iv)] apply . . . ." (§ 11517, subd. (c)(2)(E).) Subparagraph (E)(iv), as we have already noted, provides: "[i]f the agency elects to proceed under this subparagraph, the

agency shall issue its final decision not later than 100 days after rejection of the proposed decision. If the agency elects to proceed under this subparagraph, and has ordered a transcript of the proceedings before the administrative law judge, the agency shall issue its final decision not later than 100 days after receipt of the transcript." (§ 11517, subd. (c)(2)(E)(iv).)

This statutory scheme, when read as whole, requires an agency to decide a case within 100 days of rejecting an ALJ's proposed decision. And this statutory scheme, when read as a whole, is mandatory: if the agency fails to act as outlined in subparagraph (E) of section 11517, subdivision (c)(2) inclusive, the proposed decision is deemed adopted by the agency.

The obvious intent underlying these time requirements is to assure that the aggrieved party has a hearing and decision within a limited period of time. (See *Poliak v. Board of Psychology* (1997) 55 Cal.App.4th 342, 350 [63 Cal.Rptr.2d 866].) If these provisions were treated as directory rather than mandatory, this process becomes meaningless: an agency could simply delay a decision by deciding to hear the case on the record but not ordering a transcript of the proceedings. Such "administrative limbo" is at odds with the purposes of the statute.

As the trial court recognized, *St. Francis, supra*, 134 Cal.App.4th 1556, is instructive. In that case, the State Department of Health Services (Department) rejected the ALJ's proposed decision the same day it received it; however, it did not issue its own decision until 113 days later. In construing section 11517, we stated that the statute "provides that an agency must act on an administrative appeal within 100 days of the receipt of a proposed decision from the ALJ. [Citation.] If the agency fails to act *or, as here, fails to issue a final decision within 100 days of the act of rejection of the proposed decision, it 'shall be deemed adopted by the agency.'* [Citations.]" (134 Cal.App.4th at pp. 1558–1559, italics added.) We held, and the Department conceded, that the Department's decision was untimely under section 11517. (134 Cal.App.4th at p. 1561.) We rejected the Department's claim that a different statutory limitation period applied, and concluded that the ALJ's decision was deemed adopted by virtue of the Department's failure to issue a final decision within the statutory time period outlined by section 11517. (134 Cal.App.4th at pp. 1561–1564.)

CalPERS asks that we reconsider *St. Francis* and instead adopt the reasoning of an unpublished case from the Court of Appeal, Fourth Appellate District, *Rached v. Superior Court* (Dec. 7, 2005, D046734) (nonpub. opn.). We decline the invitation. (Cal. Rules of Court, rule 8.1115(a).)

DISPOSITION

The judgment is affirmed. Plaintiffs are awarded their costs on appeal.

Scotland, P. J., and Nicholson, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 17, 2009, S177234.