[No. A104363. First Dist., Div. Four. June 29, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN MOSES SCHOPPE-RICO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.A, III.C, III.D, and III.E.

COUNSEL

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Christina vom Saal and Gregg E. Zywicke, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RUVOLO, P. J.—**

## I.

## INTRODUCTION

Appellant John Moses Schoppe-Rico was convicted by a jury of shooting at an occupied vehicle; first degree murder, with a firearm enhancement; and carrying a loaded, concealed firearm while an active participant in a criminal street gang. On appeal, he contends that the statutes defining the street gang firearm offenses require proof that his possession of the firearm occurred in connection with his active gang participation. In the published portion of this opinion, we examine and interpret the street gang firearm possession statutes, and conclude, as a matter of first impression, that they do not require proof that the charged firearm possession was connected with the underlying gang participation. We therefore reject appellant's argument that his convictions under those statutes must be reversed.

Appellant also contends that the trial court erred in admitting evidence stemming from a dog scent discrimination lineup without first determining the scientific validity of that evidence; that there was insufficient evidence of premeditation and deliberation to support his first degree murder conviction; and that the trial court erred in denying his postconviction motion for new counsel without an adequate inquiry. In addition, he asserts that the judgment should be modified to specify that his determinate sentences on the vehicle shooting and firearms charges are to be served concurrently with his indeterminate sentences on the murder charge and related firearm enhancement. In the unpublished portion of this opinion, we accept appellant's contention regarding the concurrent nature of his sentences, and modify the judgment

accordingly. With that exception, we reject all of appellant's arguments, and affirm the judgment in its entirety.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.

### The Car Wash Shooting

On September 4, 2000, appellant's then girlfriend, Jennifer Smith, decided that she wanted to "get away from [appellant] for a while." Smith arranged to meet a friend, Sharon Fawcett, at a car wash, where Smith got into Fawcett's car and sat in the passenger seat. When Smith told appellant that she intended to leave with Fawcett, appellant demanded that she come home with him instead. Smith refused to do so, and appellant then pulled out his gun and fired four or five shots at Fawcett's car, shooting out two of the tires.

We will refer to this incident as the "car wash shooting." Appellant in effect concedes that he did not offer any factual defense at trial to the charges arising out of this incident.

### B.

### The Murder

On October 17, 2000, Smith again decided to try to separate from appellant. Appellant followed her out of the house, however, and then ran after her and hit her, knocking her to the ground. Smith sought sanctuary in a nearby stranger's house, but appellant came in after her, hit her again, forced her to leave with him, and threatened to get his gun. At that point, another neighborhood resident, Anita Thompson, who did not know Smith but who had herself been a domestic violence victim, invited Smith into her home. She then loosed her roommate's pit bull into the yard in order to keep appellant at bay. About half an hour later, having ascertained that appellant was no longer in sight, Thompson offered to drive Smith to a friend's house. As the two women drove south on Port Chicago Highway, Smith pointed out appellant standing next to a fence close to a bus stop near the intersection of Port Chicago Highway and Pacifica.

Shortly thereafter near the same bus stop, Albert Melton tried to push two heavy shopping carts full of recyclable containers across Port Chicago Highway. Melton's longtime friend, Nick Taylor, saw Melton struggling with the carts and came to his aid. Meanwhile, Nick Taylor's wife, Rita Taylor, went across the street to a small shopping center to run an errand.[1]

As Melton and Taylor pushed the shopping carts onto the sidewalk, Melton saw a young Hispanic man leaning on the fence near the bus stop. Melton did not know the young man, and neither he nor Taylor said anything to him or made eye contact with him. Without warning, the young man reached under his shirt, pulled out a gun, and fired five or six shots, some of which hit Taylor, and at least one of which came close enough to Melton to pass through his hat. A passerby, Paul Lancaster, also saw the shooting, and observed that the shooter was using a sawed-off .22 rifle. The shooter pointed the gun at Lancaster and fired a couple of shots, but did not hit him. Both Melton and Lancaster then saw the man cross Port Chicago Highway and jump over a retaining wall into a residential area to the east. Taylor died as a result of the gunshot wounds he sustained.

Only two of the trial witnesses—Melton and Lancaster—actually saw the man who fired the fatal shots. Lancaster was unable to identify appellant as the shooter in a field showup shortly after the arrest,[2] and was not asked to identify him at trial.

Melton did identify appellant as the shooter in his trial testimony. He also testified at trial that he had told the police during a field showup that appellant had been the shooter, although he was wearing different clothes by the time he was arrested. This testimony was undercut, however, by evidence that in Melton's statements to the police, both at the field showup and at a taped interview a few hours later, Melton was much more equivocal in his identification, saying only that appellant "[c]ould be" the shooter. He also asserted that the shooter had a mustache, whereas appellant had no facial hair.

---

[1] All further references to Taylor are to Nick Taylor. Rita Taylor did not see the shooter.

[2] We note, however, that in Lancaster's trial testimony, he consistently denied having said on the scene that appellant was not, or could not have been, the shooter. Rather, he said the man whom the police showed him shortly after the shooting (i.e., appellant) "could have very easily been" the shooter. Lancaster explained that he was unable to identify appellant as the shooter because he had not seen the shooter's face well enough to identify him based on his features, and the man the police showed him was wearing different clothes and looked taller. He pointed out, however, that he was unsure of the shooter's height, because the shooter was crouching at the time Lancaster saw him firing the shots.

According to the investigating officers, the witnesses at the scene said the shooter had worn brown khaki pants and a dark shirt.[3] Melton gave a similar description of the shooter's clothes at his taped interview. All of the witnesses described the shooter as Hispanic, and those who mentioned age all indicated that he was young. None of the investigating officers saw anyone in the area other than appellant who matched the description of the perpetrator. In addition, only 10 or 15 minutes passed between when Smith and Thompson saw appellant standing near the bus stop and the time of the shooting, and both women testified that they did not see any other young Hispanic man in the area when they passed the bus stop.

Shortly after the shooting, appellant approached a woman named Lydia Williams, who lived in the neighborhood toward which Melton and Lancaster testified the shooter had walked when he left the scene. Williams was pulling out of her driveway, and appellant asked her to give him a ride; she declined. Williams was suspicious, and when she encountered a police officer shortly thereafter, she told the officer, Deputy Whiddon, about the man she had seen. Williams and Whiddon drove around the neighborhood until they spotted appellant on a nearby street. Whiddon, who was on the scene to investigate the shooting, called for backup and arrested appellant. At the time of his encounter with Williams, and when arrested, appellant was wearing a white T-shirt and black shorts.

That afternoon, a resident at 40 Sharon Drive, in the same neighborhood where appellant was arrested, alerted police to the presence of a gun leaning against a fence in her yard, and some clothing under a nearby bush. The clothing consisted of black pants and a gray, nearly new Pro Spirit brand sweatshirt.

At trial, Smith identified the clothing found at 40 Sharon Drive, and linked it to appellant. Smith explained that the black pants belonged to her, and that appellant had been wearing them earlier that morning. She was able to confirm that the pants were hers because a piece of paper in the pocket bore the hospital room number and telephone number of a friend whom she had recently visited in the hospital. The sweatshirt found at 40 Sharon Drive was the same color and brand as a matching sweatshirt and pants outfit that Smith testified she had purchased for appellant shortly before the shooting. During the investigation of the shooting, police seized a pair of matching sweatpants from the front yard of appellant's home.

---

[3] One of the officers, however, testified that several bystanders identified the shooter as a Hispanic man with a white T-shirt and black pants.

Smith also testified that appellant owned and frequently carried with him a very distinctive gun, a .22 caliber rifle, which Smith identified as the gun found near 40 Sharon Drive after the murder. The gun had been modified in a unique way by sawing off part of the stock and wrapping the grip in electrical tape. Lancaster testified that the gun used by the shooter was a sawed-off .22 rifle. The prosecution's firearms expert testified that the .22 cartridges and bullets found at the scenes of the murder and the car wash shooting had been compared to those used in test firings from appellant's distinctive gun. The expert concluded that both sets of crime scene cartridges had been fired from appellant's gun, and that the bullets also could have been fired from it, although this could not be determined conclusively. In addition, appellant had gunshot residue on his hands when he was arrested.[4]

## C.

### The Trial Court Proceedings

After a preliminary hearing that extended over five months, an information was filed on September 26, 2001, charging appellant with six felony counts: count one, murder (Pen. Code, § 187),[5] with an enhancement for personal use and intentional discharge of a firearm causing death (§ 12022.53, subds. (b), (c), (d));[6] count two, carrying a loaded firearm while an active street gang member on October 17, 2000 (the date of the murder) (§ 12031, subd. (a)(2)(C)); count three, carrying a concealed firearm while an active street gang member on October 17, 2000 (§ 12025, subds. (a), (b)(3)); count four, discharging a firearm at an occupied motor vehicle (§ 246); count five, carrying a loaded firearm while an active street gang member on September 4, 2000 (the date of the car wash shooting) (§ 12031, subd. (a)(2)(C)); and count six, carrying a concealed firearm while an active street gang member on September 4, 2000 (§ 12025, subds. (a), (b)(3)).

After some further delay, caused in part by proceedings to determine appellant's competency to stand trial, appellant's jury trial commenced on February 26, 2003. On March 19, 2003, the jury returned verdicts finding appellant guilty of first degree murder on count one; finding the firearm enhancement true as to count one; and finding appellant guilty as charged on all of the other counts.

---

[4] Appellant's trial counsel attributed this fact to appellant's having shot off fireworks and fired his gun during the night immediately preceding the shooting.

[5] All further statutory references are to the Penal Code unless otherwise noted.

[6] The enhancement was also charged as personal use of a firearm under section 12022.5, subd. (a), but this charge was dismissed on the prosecution's motion on March 18, 2003.

Appellant then made a motion to represent himself, or for substitute counsel. The motion for substitute counsel was denied, but the self-representation motion was granted, and appellant represented himself for several months. He eventually reconsidered, however, and on July 29, 2003, appellant's original trial counsel was reappointed. Appellant's counsel then filed a motion for new trial, which the trial court denied on September 26, 2003.

On October 22, 2003, the trial court sentenced appellant to an indeterminate term of 25 years to life on count one (murder); a consecutive indeterminate term of 25 years to life on the enhancement to count one (intentional discharge of a firearm causing death); a determinate term of seven years on count four (shooting at an occupied motor vehicle); and two terms of two years each on counts two and five (carrying a loaded firearm while an active street gang member), to be served concurrently with the principal determinate term. Appellant's sentences under counts three and six (carrying a concealed firearm while an active gang member) were stayed pursuant to section 654. This timely appeal ensued.

## III.

## DISCUSSION

### A.*

### Dog Scent Evidence

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### B.

### Street Gang Firearm Offenses

█ Appellant was charged with four counts of firearm offenses, based on allegations that during both the car wash shooting and the murder, he carried a concealed and loaded firearm. Each of these counts was charged as a felony on the basis of California statutes which we will refer to as the street gang firearm statutes. (§ 12025, subds. (a), (b)(3) [concealed firearm] (section 12025(b)(3)) § 12031, subd. (a)(2)(C) [loaded firearm] (section 12031(a)(2)(C)).) Each of these statutes makes the proscribed firearm possession a felony where the perpetrator

---

*See footnote, *ante*, page 1370.

"is an active participant in a criminal street gang, as defined in subdivision (a) of [s]ection 186.22 . . . ."[7] (§§ 12025(b)(3), 12031(a)(2)(C).)

The prosecution presented ample evidence that appellant met the statutory definition of an active participant in a criminal street gang,[8] and appellant does not argue otherwise on appeal. Likewise, appellant does not challenge respondent's assertion that his participation in a criminal street gang was with knowledge that the gang's members had engaged in a pattern of criminal gang activity, and that, at least at some point in time, he willfully promoted, furthered, or assisted in felonious conduct by gang members. Rather, he contends that the street gang firearm statutes require that the firearm offenses *themselves* be committed *in connection with* the defendant's active participation in a criminal street gang. Based on this interpretation, appellant contends his firearm convictions must be reversed, because this element of the offenses was not established.

In effect, appellant seeks to add what we will refer to as a "gang connection element" to the street gang firearm statutes. His argument is essentially that the relevant provision in each statute—"[w]here the person [who possesses the firearm] *is* an active participant in a criminal street gang" (§§ 12025(b)(3), 12031(a)(2)(C), italics added)—should be construed to mean something more specific—"where the person [who possesses the firearm] *commits such possession in connection with the person's status as* an active participant in a criminal street gang."

Appellant raises this argument in two separate procedural contexts. He argues that (1) his motion for acquittal on the street gang firearm charges, made at the close of the prosecution's case under section 1118.1, should have been granted, because the prosecution presented no evidence of the gang connection element; and (2) his conviction on the street gang firearm counts should be reversed because the jury was not instructed that it had to find the gang connection element in order to convict appellant on these counts.

---

[7] Section 186.22, subdivision (a) (section 186.22(a)) provides as follows: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

[8] This evidence included appellant's own statements to Smith that he was a gang member; Smith's testimony that appellant had engaged in a verbal altercation with a group of men wearing the color of a rival gang, and had pointed his gun at them and fired a shot in the air to chase them away; appellant's numerous tattoos indicating affiliation with the Norteno gang; and the presence in appellant's bedroom of gang graffiti and photographs of appellant with gang members. The prosecution also called a gang expert who testified that appellant had been "validated" by the police as a Norteno gang member in 1996, and described the nature, culture, and violent criminal behavior of the Norteno gang.

Respondent contends that, even if appellant were correct in his statutory analysis, the prosecution presented sufficient evidence of the gang connection element for the firearm charges to survive appellant's motion for acquittal. As to the gun possession at the time of the murder, respondent argues that the gang connection element was shown by the fact that the victim was wearing blue, the color associated with the principal rival of appellant's gang. As to the gun possession at the time of the car wash shooting, respondent posits that this crime was committed as part of appellant's gang participation because it was "a manifestation of appellant's violent tendencies," which he "fostered specifically to benefit his gang, and its reputation for toughness."

We need not and do not determine whether respondent's factual conclusions regarding this issue are correct.[9] Instead, we address and reject appellant's main argument, i.e., that the street gang firearm statutes incorporate a gang connection element. This contention raises a pure question of law requiring interpretation of the relevant statutes, as to which our standard of review is de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *People v. Love* (2005) 132 Cal.App.4th 276, 284 [34 Cal.Rptr.3d 6].)

■ "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196]). We construe the words of a statute in context, and to the extent possible, harmonize provisions relating to the same subject matter. (*People v. Shabazz* (2006) 38 Cal.4th 55, 67–68 [40 Cal.Rptr.3d 750, 130 P.3d 519]; *People v. Robles* (2000) 23 Cal.4th 1106, 1114 [99 Cal.Rptr.2d 120, 5 P.3d 176] (*Robles*); *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

---

[9] As evidence that the color of the victim's clothing was the motive for the murder, respondent cites the opinion of the prosecution's gang expert. The expert's testimony about the color of the victim's clothing, however, was offered as one of a number of facts supporting the expert's opinion that appellant was still an active gang participant at the time of the murder. The expert was not asked to, and did not, render an opinion that the possession of the murder weapon, or the murder itself, for that matter, were committed in connection with appellant's gang participation. As for respondent's argument proposing a connection between appellant's gang participation and the car wash shooting, it arguably proves too much. If accepted, it would mean that every violent crime committed by a gang member, no matter how far removed from the perpetrator's gang activities, is ipso facto committed as part of the perpetrator's participation in a gang.

In this case, we are aided in our interpretive task by the fact that one of the street gang firearm statutes charged against appellant, section 12031(a)(2)(C) (loaded firearm), was analyzed in depth by our Supreme Court in *Robles, supra,* 23 Cal.4th 1106.[10] In *Robles,* the defendant was standing on the street with a group of people in gang attire when a police officer saw him discard a gun. After his arrest, the defendant acknowledged that he was a member of a gang. The defendant was prosecuted for carrying a loaded firearm, and the offense was charged as a felony under section 12031(a)(2)(C).

After the preliminary hearing, the defendant in *Robles* moved to dismiss the felony complaint on the ground that the prosecution had shown only that he actively participated in a gang, and had not proven the other elements of section 186.22(a), that is, knowledge of the gang's pattern of criminal activity, and willful promotion, furtherance, or assistance of the gang's felonious conduct. (*Robles, supra,* 23 Cal.4th at pp. 1109–1110.) Thus, the issue in *Robles* was whether the street gang firearm statutes elevate the firearm offense to a felony if the defendant satisfies just one *particular* element of the offense defined in section 186.22(a), i.e., active participation in a criminal street gang, or do so only if the defendant *also* meets the *additional* criteria for the substantive offense defined in section 186.22(a). (23 Cal.4th at pp. 1111–1112.)

The Supreme Court concluded in *Robles* that the prosecution in a street gang firearm case must prove that the defendant satisfies *all* of the elements of section 186.22(a). (*Robles, supra,* 23 Cal.4th at p. 1115.) However, the *Robles* court was not required to address the issue appellant raises in the present case, i.e., whether the firearm offense itself must occur in connection with the defendant's gang participation.

Nevertheless, in analyzing the legislative intent behind the street gang firearms statutes, the *Robles* court shed significant light on the question now before us. As the *Robles* opinion pointed out, the offense defined by section

---

[10] The Supreme Court's interpretation of section 12031(a)(2)(C) in *Robles* applies with equal force to the identical language in section 12025(b)(2), which was enacted at the same time as part of the Anti-Street Crimes Act of 1995. (Stats. 1996, ch. 787, §§ 1, 2, 3, pp. 4152–4154; see *People v. Caudillo* (1978) 21 Cal.3d 562, 585 [146 Cal.Rptr. 859, 580 P.2d 274], overruled on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 229, 237, fn. 6 [83 Cal.Rptr.2d 533, 973 P.2d 512], and *People v. Escobar* (1992) 3 Cal.4th 740, 749–752, fn. 5 [12 Cal.Rptr.2d 586, 837 P.2d 1100] [identical language in two statutes dealing with the same subject matter should be given the same meaning, especially if enacted at the same time].) Neither party here argues otherwise. Thus, for the purpose of deciding the issue raised by appellant in this case, we draw no distinction between the two street gang firearm statutes.

186.22(a) itself is subject to an enhancement under section 12021.5, subdivision (a),[11] but only if the section 186.22(a) offense is treated as a felony, *and* the perpetrator carries a firearm *during* the commission of the crime. (*Robles, supra*, 23 Cal.4th at pp. 1112–1113.) "Thus, it is entirely plausible that the Legislature may have enacted section 12031(a)(2)(C) to cover a situation not subject to felony punishment under section 186.22(a): when the person carrying the loaded firearm had *at some other time* committed a violation of section 186.22(a)." (*Id.* at p. 1113.)

We recognize that the portion of *Robles* just quoted is dictum, but nonetheless find its analysis highly persuasive. To construe the street gang firearm statutes as including a gang connection element, as advocated by appellant, not only would strain their language, but also would render them almost entirely unnecessary. (Cf. *People v. Shabazz, supra*, 38 Cal.4th at pp. 67–68 [statutory interpretation that renders related provisions nugatory must be avoided].) As pointed out in *Robles,* if so construed, the statutes would be subsumed under the firearm enhancement provision set forth in section 12021.5, subdivision (a), except where the underlying section 186.22(a) offense was treated as a misdemeanor. Appellant has cited no legislative history or other authority supporting the view that the Legislature intended the street gang firearms statutes to have such an extremely narrow application. On the contrary, it appears far more likely, as *Robles* surmised, that the Legislature intended the street gang firearms statutes to make it possible to convict active gang members of a felony whenever they are found in possession of a loaded or concealed firearm, even when the prosecution cannot establish any temporal or causal connection between the firearm possession and gang activity. (*Robles, supra*, 23 Cal.4th at p. 1113.)

The cases appellant relies upon to support his contrary interpretation are *People v. Ngoun* (2001) 88 Cal.App.4th 432 [105 Cal.Rptr.2d 837] (*Ngoun*) and *People v. Ferraez* (2003) 112 Cal.App.4th 925 [5 Cal.Rptr.3d 640] (*Ferraez*). Both of these cases, however, involved convictions under section 186.22(a) itself, not firearms charges that were elevated to felonies under the street gang firearm statutes.

In *Ngoun,* the issue was whether the defendant was properly convicted of "promot[ing], further[ing], or assist[ing] in . . . felonious criminal conduct by members of [his] gang" (§ 186.22(a)), when it was undisputed that the

---

[11] Section 12021.5, subdivision (a), provides in pertinent part that: "Every person who carries a loaded or unloaded firearm on his or her person, or in a vehicle, during the commission or attempted commission of any street gang crimes described in subdivision (a) or (b) of Section 186.22, shall, upon conviction of the felony or attempted felony, be punished by an additional term of imprisonment in the state prison for one, two, or three years in the court's discretion."

defendant was the *perpetrator*, and not merely an aider and abettor, of the murder and assaults on which the charge was based. (*Ngoun, supra*, 88 Cal.App.4th at pp. 434–435.) The *Ngoun* court held that section 186.22(a) imposes liability on principals as well as aiders and abetters of gang-related crimes. This holding lends no support to appellant's argument about the meaning of the street gang firearm statutes.

In *Ferraez, supra*, 112 Cal.App.4th 925, not only was the defendant charged with violating section 186.22(a), but also an enhancement was alleged under section 186.22, subdivision (b)(1) (section 186.22(b)(1)). In order for the enhancement to apply, section 186.22(b)(1) requires the defendant to be "convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." Thus, in resolving the defendant's challenge to the sufficiency of the evidence supporting his conviction, the court necessarily considered the question whether the defendant "intended to further the gang's felonious conduct by selling drugs." (*Ferraez, supra*, 112 Cal.App.4th at p. 929.)

The street gang firearm statutes, in contrast, contain no language equivalent to the provision in section 186.22(b)(1) requiring that the firearm possession be committed with the specific intent to promote, further, or assist in any criminal conduct by the gang. Thus, the *Ferraez* court's discussion of whether the defendant's drug sale was gang related has no bearing on whether the defendant in a street gang firearm case must possess the concealed or loaded firearm in connection with the defendant's active participation in a gang.

Our own research has disclosed only one other published opinion bearing on this issue, which neither party has cited. In *People v. Flores* (2005) 129 Cal.App.4th 174 [28 Cal.Rptr.3d 232] (*Flores*), Division Three of the Fourth District Court of Appeal held that because all the elements of section 186.22(a) must be shown in order to convict a defendant of a felony street gang firearm offense, the section 186.22(a) offense is a necessarily included offense of the felony street gang firearm offense. (129 Cal.App.4th at p. 184.) In its discussion of this point, the *Flores* court stated that the defendant "could not have committed [the street gang firearm offense] without necessarily committing [the section 186.22(a) offense] at the same time." (*Ibid.*) While superficially this language in *Flores* might appear to support appellant's position in this case, upon closer examination it does not, for several independent reasons.

First, in *Flores*, the Attorney General conceded that the defendant was correct that his section 186.22(a) conviction should be reversed as a necessarily included offense, and the court did not analyze the question in detail in its opinion. (See *Flores*, *supra*, 129 Cal.App.4th at p. 184.) Respondent here has made no equivalent concession.

More importantly, in *Flores* both the section 186.22(a) charge and the street gang firearm charge stemmed from a single incident. (See *Flores*, *supra*, 129 Cal.App.4th at pp. 178–180.) Thus, the street gang firearm offense happened, in fact, to have been committed in connection with an underlying gang crime. Given the factual intersection of the two events in that case, the section 186.22(a) charge became a lesser included offense of the firearm offense. But *Flores* cannot be read so broadly as to support appellant's position that the street gang firearm statutes *require* that the firearm offense occur in connection with the defendant's active gang participation. That issue simply was not presented or addressed under the facts of *Flores*.

■ For the foregoing reasons, we conclude that the street gang firearm statutes do not include a gang connection element. This disposes not only of appellant's argument that his motion for acquittal should have been granted because the gang connection was not proven, but also of his argument that his convictions under the street gang firearm statutes must be reversed because the jury was not instructed that it had to find a gang connection in order to convict him of the firearm offenses. We therefore reject appellant's challenge to his convictions under the street gang firearm statutes.

Appellant also relies on his gang connection element claim as the basis for an additional contention. He argues that because the street gang firearm charges should have been dismissed, the trial court erred in admitting evidence of appellant's gang membership and activities. Averring that this evidence was highly prejudicial to appellant's defense case on the murder charge, appellant contends his murder conviction should be reversed. Because we have rejected the premise of this argument, we also reject its conclusion.

C.–E.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

---

*See footnote, *ante*, page 1370.

## IV.

## DISPOSITION

The judgment is modified to provide that appellant's determinate sentence shall be served concurrently with his indeterminate sentence, and the trial court is directed to correct the record accordingly. Except as so modified, the judgment is affirmed.

Reardon, J., and Sepulveda, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 18, 2006, S145493. George, C. J., and Baxter, J., did not participate therein.