Filed 1/21/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HENRY TRAN, | B309226 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS173611) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mitchell L. Beckloff, Judge. Reversed and remanded with directions.

Law Offices of Joshua Kaplan and Joshua Kaplan for Plaintiff and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Starr Coleman, Assistant County Counsel, and Keever Anya Rhodes Muir, Deputy County Counsel, for Defendants and Respondents.

The owner of a market in unincorporated Los Angeles County applied to renew the store's conditional use permit for the sale of beer, wine, and spirits. After the County Department of Regional Planning reviewed the application and recommended certain limitations on the store's alcohol sales, the Regional Planning Commission approved the conditional use permit with a modification extending the hours of alcohol sales beyond the limitations recommended by the Department. The Los Angeles County Board of Supervisors subsequently reviewed the decision and imposed new limits on alcohol sales hours and certain alcohol container sizes after a public hearing.

This appeal arises from the trial court's denial of a petition for a writ of mandate by the store owner, seeking to overturn the Board of Supervisors' decision. Appellant contends that the Board's decision was untimely rendered and that the decision is unsupported by substantial evidence. We conclude that the 30-day time limit for the Board to render its decision under Los Angeles County Code section 22.240.060 was mandatory, not directory, that the Board failed to render its decision within 30 days, and that the trial court's judgment should be reversed and remanded with instructions to issue a writ of mandate vacating the Board's decision and deeming the Regional Planning Commission's decision affirmed.

## FACTUAL AND PROCEDURAL HISTORY

Appellant Henry Tran is the owner of My Vermont Liquor store located in the West Athens-Westmont neighborhood, an unincorporated area of south Los Angeles. In May 2014, Tran applied to the Los Angeles County Department of Regional Planning (Department) for a renewal of the store's conditional

2

use permit (CUP) to sell beer, wine, and spirits for off-site consumption.

The Department prepared a report analyzing the renewal application, which it presented to the Regional Planning Commission (Commission) at a public hearing on May 3, 2017. Considering the store's location and site plan, information from the California Department of Alcohol and Beverage Control, a crime report from the South Los Angeles sheriff's station, and letters from the public, the Department recommended that the Commission approve the CUP subject to several conditions.

At the Commission hearing, Tran objected to two of the Department's proposed conditions: (1) that the hours of alcohol sales be limited to between 6:00 a.m. and 10:00 p.m., and (2) that distilled spirits not be sold in bottles or containers less than 750 milliliters or 25.4 ounces. The Commission approved the CUP without altering the Department's recommended prohibition on small bottle sales of distilled spirits, but did expand the hours limitation to permit alcohol sales from 6:00 a.m. to 2:00 a.m.

Two days later, on May 5, 2017, a recommendation to initiate review of the CUP was added to the agenda of the next Los Angeles County Board of Supervisors (Board) meeting by Supervisor Mark Ridley-Thomas. On May 9, 2017, the Board voted to initiate a call for review of the Commission's approval of the CUP and to set the matter for public hearing. The matter was set for public hearing at the Board's August 1, 2017 meeting.

At the Board's public hearing on August 1, 2017, the Board heard testimony from members of the public and the Department presented the CUP request and its previous report, reiterating the Department's recommendations that alcohol sales be limited to between 6:00 a.m. and 10:00 p.m., that the size of beer and

3

wine containers be limited, and that the sale of miniature bottles of alcohol be prohibited.

At the close of the August 1, 2017 public hearing, Supervisor Ridley-Thomas moved the Board to "indicate its 'intent to approve' " the CUP with two revisions: restricting the sale of alcohol to between 10:00 a.m. and 10:00 p.m. (more limited than the Department's recommendations) and including a new condition forbidding sale of distilled spirits "in a bottle or a container less than 750 milliliters or 25.4 ounces." The Board passed the motion, entered a resolution of intent to approve the CUP with the modified conditions, and "instruct[ed] county counsel to prepare the necessary findings and conditions for approval for the [CUP] with changes as directed by this motion."

About eight months later, on the consent calendar of a regular Board meeting on March 20, 2018, the Board adopted the findings and conditions of approval prepared by county counsel and approved the CUP with the modified conditions the Board had previously indicated in its "intent to approve."

On May 17, 2018, Tran filed a petition for a writ of administrative mandate in the trial court, seeking an order for the Board to set aside its decision and to reinstate the decision of the Commission. (Code Civ. Proc., § 1094.5.) Tran argued that the Board's decision was an untimely nullity under Los Angeles County Code section 22.240.060, subdivision E.4,[1] which provides that review decisions "shall be rendered within 30 days of the close of the hearing" and that the decision in any event did not

---

[1] Further undesignated statutory references are to the Los Angeles County Code.

4

provide "specific reasons for modification" and was not supported by the evidence.

The trial court found that for purposes of the 30-day deadline the Board rendered its decision on August 1, 2017, when it indicated its "intent to approve" the CUP with the modified conditions, not on March 20, 2018, when it adopted the findings and conditions and formally approved the CUP. It also concluded that the Board's findings regarding the store's location, nearby sensitive uses, and overconcentration of alcohol sales in that census tract sufficiently explained why the Board modified the Commission's decision. As for the evidence, the trial court applied substantial evidence review and concluded substantial evidence supported the Board's findings, and the findings supported the Board's decision.

The trial court entered an order and judgment denying the petition. This appeal followed.

## DISCUSSION

### I. Standard of Review

" 'The question presented by a petition for writ of administrative mandate is whether the agency or tribunal that issued the decision being challenged "proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." ' " (*Lateef v. City of Madera* (2020) 45 Cal.App.5th 245, 252 (*Lateef*).) Under Code of Civil Procedure section 1094.5, " ' "[a]buse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." ' " (*Lateef*, at p. 252; see Code Civ. Proc., § 1094.5, subd. (b); see also Gov. Code, § 65010, subd. (b) [no erroneous action by public

5

agency will be set aside by court unless court finds error was prejudicial].)

"In reviewing the trial court's denial of the petition for a writ of administrative mandate, we apply the substantial evidence test to the trial court's factual findings. [Citation.] In doing so, we ' "resolve all conflicts and indulge all reasonable inferences in favor of the party who prevailed in the trial court." ' [Citation.] We review questions of law, such as the interpretation of local ordinances and municipal codes, de novo." (*Meyers v. Board of Administration etc.* (2014) 224 Cal.App.4th 250, 256.)

"The rules of statutory construction applicable to statutes are also applicable to municipal ordinances." (*Lateef*, *supra,* 45 Cal.App.5th at p. 253.) Our primary task is to determine the lawmakers' intent, " ' "first look[ing] to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction." ' " (*Ibid.*; *MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082.)

## II. The Board's Action Violated a Mandatory Time Limit

### A. Applicable code provisions

The parties agree that the Board's review of the Commission's CUP determination is governed by title 22 of the Los Angeles County Code, section 22.240.060 (Procedures for Appeals and Calls for Review). In relevant part, section 22.240.060 provides:

"D. Hearing. At the hearing, the Appeal Body shall review the record of the decision and hear testimony of the appellant, the applicant, the party or body whose decision is being appealed or reviewed, and any other interested party.

"E. Decision and Notice.

"1. After the hearing, the Appeal Body shall affirm, modify, or reverse the original decision or refer the matter back for further review.

"2. As part of the decision, the Appeal Body may impose additional conditions on a project in granting approval to a modified project.

"3. When a decision is modified or reversed, the Appeal Body shall state the specific reasons for modification or reversal.

"4. Decisions on appeals or reviews shall be rendered within 30 days of the close of the hearing.

"5. The secretary or clerk of the Appeal Body shall mail the notice of decision in compliance with Section 22.222.220 (Notice of Action), within 10 days after the date of the decision.

"F. Effective Date of Decision. Where the decision of the Appeal Body is final and the application is not subject to further administrative appeal, the date of decision by the Appeal Body on such appeal shall be deemed the date of grant in determining said expiration date.

"G. Failure to Act. If the Appeal Body fails to act upon an appeal within the time limits prescribed in Subsection E.4, above, the decision from which the appeal was taken shall be deemed affirmed."

The current version of title 22, the Planning and Zoning Code, was enacted in 2019 by Los Angeles County Ordinance No. 2019-0004 and consisted of technical updates and reorganization to the preceding version. The substance of the code sections relevant to this appeal was unchanged.[2] Where, as

---

[2] In relevant part, former section 22.60.240 (Procedures for appeals and calls for review) provides:

here, a statutory amendment "merely *clarifies*, rather than changes, existing law," it is not improperly retroactive to apply it to transactions predating its enactment because the true meaning of the statute remains unchanged. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243; *Scott v. City of San Diego* (2019) 38 Cal.App.5th 228, 235–236.) Although we cite to the current version of the code for ease of reference, our analysis is the same under either version of the code.

---

"C. Plans and Materials. . . . Nothing herein shall prevent the appellate body from imposing conditions on a project and granting approval to a project modified by conditions imposed as part of the decision.
"D. Hearing. At the hearing, the appellate body shall review the record of the decision and hear testimony of the appellant, the applicant, the party or body whose decision is being appealed or reviewed, and any other interested party.
"E. Decision and Notice. After the hearing, the appellate body shall affirm, modify, or reverse the original decision or refer the matter back for further review. When a decision is modified or reversed, the appellate body shall state the specific reasons for modification or reversal. Decisions on appeals or reviews shall be rendered within 30 days of the close of the hearing. The secretary or clerk of the appellate body shall mail notice of the decision within five working days after the date of the decision to the applicant, the appellant and any other persons required to be notified pursuant to Section 22.60.190.
"F. Failure to Act. If the appellate body fails to act upon an appeal within the time limits prescribed in subsection E of this section, the decision from which the appeal was taken shall be deemed affirmed."

**B.      The requirement that the Board shall render its decision within 30 days is mandatory, not directory**

Section 22.240.060, subdivision E.4 provides that "[d]ecisions on appeals or reviews shall be rendered within 30 days of the close of the hearing." Subdivision G provides that "[i]f the Appeal Body fails to act upon an appeal within the time limits prescribed in Subsection E.4, above, the decision from which the appeal was taken shall be deemed affirmed."

Tran contends that the Board's decision was rendered more than 30 days after the close of the review hearing, in violation of section 22.240.060, subdivision E.4, thus the Board's decision is a nullity and the Commission's previous decision must be deemed affirmed due to the Board's failure to timely act. In so doing, Tran presents two interrelated issues of statutory interpretation:

First, Tran contends that the use of the word "shall" in subdivision E.4 mandates that the Board may not issue any review decision after the 30-day limit. Thus, he urges us to conclude that any decision rendered beyond the 30-day period after the close of the hearing is necessarily invalid, and the trial court erred in concluding that "shall" as used in that subdivision is "directory" rather than "mandatory."

Although "the word 'shall' in a statute is ordinarily deemed mandatory" (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1143 (*California Correctional*)), "a court may consider the consequences that would follow from a particular construction and will not readily imply an unreasonable legislative purpose." (*Id.* at pp. 1147–1148 [statute providing that State Personnel Board "shall" render its decision within six months following investigation is directory, not mandatory and jurisdictional, where no consequence specified

9

for inaction].)  In interpreting statutory requirements, whether a requirement is "mandatory" or "directory" "is determined largely by its effect:  'If the failure to comply with a particular procedural step does not invalidate the action ultimately taken, . . . the procedural requirement is referred to as "directory."  If, on the other hand, it is concluded that noncompliance does invalidate subsequent action, the requirement is deemed "mandatory." ' "  (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 340 (*Kabran*).)  "The mandatory-directory distinction is not to be confused with the distinction between 'obligatory' and 'permissive' statutory provisions."  (*Ibid*.)  The "obligatory-permissive" distinction concerns "whether a governmental entity or party is required to conform to a certain procedure (i.e., obligatory) or whether it 'may or may not comply as it chooses' (i.e., permissive)."  (*Ibid*., quoting *People v. McGee* (1977) 19 Cal.3d 948, 959.)  Here, the relevant " ' " 'directory-mandatory' distinction is concerned only with whether a *particular remedy*—invalidation of the ultimate governmental action—is appropriate when a procedural requirement is violated." ' "  (*Kabran*, at p. 340, quoting *People v. Allen* (2007) 42 Cal.4th 91, 101.)

As a general rule, "time limits applicable to government action are deemed to be directory unless the Legislature clearly expresses a contrary intent."  (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2016) 248 Cal.App.4th 349, 364 (*State Comp. Ins. Fund*); accord, *Edwards v. Steele* (1979) 25 Cal.3d 406, 410 ["generally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed"].)  " 'In ascertaining probable intent, California courts have expressed a variety of tests.  In some cases focus has been

directed at the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. [Citations.] Other cases have suggested that a time limitation is deemed merely directory "unless a consequence or penalty is provided for failure to do the act within the time commanded." ' " (*California Correctional, supra*, 10 Cal.4th at p. 1145 [concluding six-month time limit to issue Personnel Board decision is directory because it "includes no provision which suggests that action by the Board after the time limit has been exceeded is invalid"].) Under this framework, "statutes setting forth time frames for government action that do not include a self-executing consequence are almost universally construed as directory, rather than mandatory or jurisdictional." (*State Comp. Ins. Fund,* at p. 365 [collecting cases].)

Conversely, "statutory provisions relating to time generally will be construed as mandatory where consequences or penalties are attached to the failure to observe the provision within a given time." (*County of Sacramento v. Ins. Co. of the W.* (1983) 139 Cal.App.3d 561, 565–566; see, e.g., *1305 Ingraham, LLC v. City of Los Angeles* (2019) 32 Cal.App.5th 1253, 1261–1262 (*1305 Ingraham*); *Matus v. Board of Administration* (2009) 177 Cal.App.4th 597, 609 (*Matus*) ["if the statute attaches consequences or penalties to the failure to observe time limits, the statute is construed [a]s mandatory"].) "Mandatory" in this context is not wholly synonymous with "jurisdictional." As our Supreme Court explained in *Kabran*: "Where the statutory provision at issue governs a decisionmaking entity's exercise of authority—like that of an administrative agency—a 'mandatory' statute may be 'jurisdictional' in the sense that the entity lacks

11

the power to take the action at issue if it does not comply with the statute.  [Citations.]  [¶]  But a party's failure to comply with a mandatory requirement 'does not necessarily mean a court loses *fundamental* jurisdiction resulting in "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." ' "  " 'There are many time provisions, e.g., in procedural rules, that are not directory but mandatory; these are binding, and parties must comply with them to avoid a default or other penalty. But failure to comply does not render the proceeding void' in a fundamental sense." (*Kabran, supra,* 2 Cal.5th at pp. 340–341.)

In *1305 Ingraham*, the court considered a Los Angeles Municipal Code provision that required the Area Planning Commission to " 'render its decision in writing within 15 days after completion of the hearing' " on appeals from site plan review decisions of the planning director.  (32 Cal.App.5th at p. 1261.) The same subsection also provided that " '[i]f the Area Planning Commission fails to act within the time specified, the action of the Director shall be final.' "  (*Ibid.*)  The court concluded that "[t]his section, by its plain terms, states that the commission's failure to act in a timely fashion renders the director's decision the final one."  (*Ibid.*)  As a policy matter, the court explained that "such provisions provide a backstop to provide interested parties with an actionable decision in the event of a procedural lapse by the decisionmaking body," and that the purposes of the site plan review procedures in the municipal code "are not served if the statute is interpreted to allow a project to remain in a state of perpetual limbo due to a procedural error."  (*Id.* at pp. 1262–1263.)

Similarly, in *Matus*, the Court of Appeal held that Government Code section 11517, subdivision (c)(2), which states that an administrative law judge's proposed decision "shall be deemed adopted" if the agency does not act on an administrative appeal within 100 days, is also mandatory. (*Matus, supra*, 177 Cal.App.4th at pp. 608–611; see, e.g., *St. Francis Medical Center v. Shewry* (2005) 134 Cal.App.4th 1556, 1561–1562 [proposed decision deemed adopted under Government Code section 11517, subdivision (c)(2) where agency issued final, contrary decision 113 days after rejection of proposed decision, beyond the 100-day limit].)

We conclude that when read in tandem with the "failure to act" clause of section 22.240.060, subdivision G, the intent of the 30-day time limit in subdivision E.4 is indeed to have a mandatory, rather than a directory, effect. The plain language of section 22.240.060 unambiguously provides that the appeal body shall render its decision within 30 days after the hearing, and that if it fails to do so, the previous decision shall be deemed affirmed—a self-executing consequence for failure to do the relevant act within the time commanded. " 'It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed.' " (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998.) " 'The Legislature's chosen language is the most reliable indicator of its intent because " 'it is the language of the statute itself that has successfully braved the legislative gauntlet.' " ' " (*Lateef, supra*, 45 Cal.App.5th at p. 253.) Here, the legislative intent is clearly expressed that government noncompliance with the time limit leads to invalidation of subsequent action, the hallmark of a mandatory statutory provision.

13

*Anderson v. Pittenger* (1961) 197 Cal.App.2d 188, on which the County relies, is distinguishable because it involved an ordinance with no specified consequence for failure to act. There, a West Covina municipal zoning ordinance required the city council to announce its decision, findings, and reasoning on a zoning variance appeal within 30 days after the close of the hearing. (*Id.* at pp. 192–193.) The Court of Appeal explained that the ordinance was directory, not mandatory, specifically because it "does not state that the council shall lose jurisdiction after the 30-day period; nor does it state that the failure to act within that period will result in the commission's order being deemed the order of the council." (*Id.* at p. 193.) Here, in contrast, section 22.240.060, subdivision G plainly provides that the failure to render a decision within 30 days shall result in the prior order being deemed affirmed. Although the County ignores the existence of subdivision G in its briefing, we may not: "In the construction of a statute . . . the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." (Code Civ. Proc., § 1858; *Lateef, supra,* 45 Cal.App.5th at p. 253.)

### C.     The Board's decision was rendered on March 20, 2018

Second, the parties dispute when the Board's "decision" was "rendered," the relevant event that must occur within 30 days after the hearing. The parties do not dispute that the relevant hearing was on August 1, 2017. The County contends that the Board rendered its decision on August 1, 2017, when it closed the hearing, passed the motion of "intent to approve" the CUP with the modified conditions, and instructed county counsel "to

14

prepare the necessary findings and conditions for approval of the [CUP] with changes." Tran contends that the Board rendered its decision on March 20, 2018, when it adopted the findings of county counsel and approved the CUP with the modified conditions included.

Title 22 of the Los Angeles County Code does not define "decision" or "render," and neither party has directed us to any authority interpreting either term as used in current section 22.240.060 or former section 22.60.240. " 'We give the words of the statute "a plain and commonsense meaning" unless the statute specifically defines the words to give them a special meaning." ' " (*Lateef, supra,* 45 Cal.App.5th at p. 253.)

The County urges us to construe the resolution of "intent to approve" as the relevant "decision" for purposes of the requirement that the Board render its decision within 30 days, and describes the adoption of findings and final approval of the CUP as "simply a formality memorializing the Board's August 1, 2017 decision." However, the County does not, and cannot, contend that the Board's "indication" of "intent to approve" constitutes its final decision or that August 1, 2017, otherwise legally functions as the relevant "decision" date under the usual understanding of the term. The parties do not dispute, for instance, that the March 20, 2018 decision, if valid, is the operative final decision of the Board on this matter, that the CUP was not officially approved, and that the findings and conditions were not adopted until then.

Other ordinary legal consequences such as the availability of judicial review and statute of limitations to challenge the decision also flow solely from the March 20, 2018 date of final approval, not the August 1, 2017 resolution of intent to approve.

15

(See, e.g., *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22 ["if the challenge is to the application of the regulation to a specific piece of property, the statute of limitations for initiating a judicial challenge to the administrative action runs from the date of the final adjudicatory administrative decision"]; *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1324 ["If a party challenges conditions attached to a conditional use permit or other permit, the limitations period runs from the date of final administrative action on the permit"]; *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 767 [final administrative act for purposes of challenging the conditions of a building permit was the approval of the permit with the conditions attached]; *Alta Loma School Dist. v. San Bernardino County Com. on School Dist. Reorganization* (1981) 124 Cal.App.3d 542, 554 ["The exhaustion doctrine precludes review of an intermediate or interlocutory action of an administrative agency. [Citations.] A party must proceed through the full administrative process 'to a final decision on the merits' "].)

Moreover, in the context of an adjudicatory determination such as this, a "decision" on the merits is ordinarily understood to include findings of fact. Approval of a conditional use permit, like many other zoning and planning approvals, is a classic "adjudicatory" matter in which the government's action affecting an individual is " 'determined by facts peculiar to the individual case.' " (*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 612–613.) "Ordinarily, when an administrative agency makes an adjudicatory decision, it is required to make findings sufficient both to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the decision." (*Respers*

*v. Univ. of Cal. Ret. Sys.* (1985) 171 Cal.App.3d 864, 870; cf. *Feist v. Rowe* (1970) 3 Cal.App.3d 404, 420 ["Where the agency itself hears all the evidence and adopts findings of fact that reflect its decision on contested issues of fact, and determines what action it will take as a result of its findings, it makes 'the decision' "].)  The resolution of intent to approve, in contrast, did not include the adoption of specific findings, just an instruction for county counsel "to prepare the necessary findings and conditions for approval of the [CUP] with changes."  The actual findings were not presented or adopted until March 20, 2018.

Simply, a resolution indicating "intent to approve" the CUP with modifications does not accord with the usual understanding of an adjudicatory decision adopting specific findings and formally approving the CUP as modified.  We recognize that issuing an "intent to approve" determination is a common procedural device for local boards, serving to provide notice to parties and the public of the board's intended decision in advance of finalizing the necessary findings or conditions.  (E.g., *Johnston v. Sonoma County Agricultural Preservation & Open Space Dist.* (2002) 100 Cal.App.4th 973, 980–981 [board of open space district adopted resolution of intent to approve utility easement subject to conditions, continued hearing to allow time to meet conditions for approval, then passed final approval].)  But, in itself it is not an operative "decision" as commonly understood.  A resolution of intent to approve has no conclusive authority on the merits—at that point in the present case, the CUP had not been finally approved or the findings and conditions adopted.  It has no collateral estoppel effect.  (See *Smith v. Selma Community Hospital* (2008) 164 Cal.App.4th 1478, 1506 [for decision to have administrative collateral estoppel effect, " 'the decision must be

17

final with respect to action by the administrative agency [citation]; and . . . the decision must have conclusive effect' "].) Nor does a resolution of intent to approve give rise to the other usual legal consequences of a "decision." Rather, it is an interlocutory action, merely signaling the intent of the Board to proceed in a certain way.

Although section 22.240.060, subdivision E.4 does not specify whether the "decision" rendered must be final, we also conclude that finality is required by construing subdivision E.4 not in isolation but in the context of the surrounding statutory framework. A court must "construe the words of a statute in context, and to the extent possible, harmonize provisions relating to the same subject matter." (*People v. Schoppe-Rico* (2006) 140 Cal.App.4th 1370, 1379.) " '[E]ach sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed.' " (*Robson v. Upper San Gabriel Valley Municipal Water Dist.* (2006) 142 Cal.App.4th 877, 884–885.)

Given the surrounding statutory language, if the interlocutory resolution of intent to approve were considered the "decision" of the Board for purposes of all subdivisions of section 22.240.060, it would lead to absurd results. For example, section 22.240.060, subdivision F (Effective Date of Decision) provides: "Where the decision of the Appeal Body is final and the application is not subject to further administrative appeal, the date of decision by the Appeal Body on such appeal shall be deemed the date of grant in determining the expiration date." Similarly, section 22.222.230, subdivision F (Effective Date of Decision and Appeals), which applies to appeals processed under

18

chapter 22.240 (see § 22.222.230, subd. B) provides: "Where a decision on a permit or review is appealed to, or called for review by, the Board, the date of decision by the Board of such appeal or review shall be deemed the date of grant in determining the effective date." In other words, the date of the "decision" by the Board determines the effective date the permit was granted, and triggers the start of the applicable permit period. "Decision" in this context can only mean a final decision, as it would be impossible for a permit to be granted or the permit period to commence before final approval.

The statute's procedural interrelationship with the CUP itself likewise supports this interpretation. The conditions of approval adopted on March 20, 2018, provide that the CUP grant "shall terminate 10 years after the date of final approval" and "shall expire unless used within 90 days from the date of final approval." The conditions specify that "[u]nless otherwise apparent from the context, the term 'date of final approval' shall mean the date the County's action becomes effective, pursuant to [then-]Section 22.60.260 [now Section 22.240.060, subdivision F] of the Los Angeles County Code." As already noted, subdivision F provides that "the date of decision by the Appeal Body" shall be deemed the effective date of grant. Thus, by its own terms, the CUPs 10-year permit period and 90-day expiration window begin to run on the "date of decision" under subdivision F. If the relevant "decision" was the resolution of intent to approve, the effective date would be August 1, 2017, and the 90-day expiration period would have come and gone before the Board's final approval of the CUP on March 20, 2018—an absurd result.

We thus decline to conclude that there are both final and interlocutory "decisions" of the Board contemplated by different

19

subdivisions of section 22.240.060.  The more reasonable result is that the "decision" refers to the final, operative decision of the Board, here, the Board's final approval of the modified CUP on March 20, 2018.  We will not read another meaning into the statutory language or conclude that different "decisions" exist for different purposes where no such distinction is specified.  "[W]e are not empowered to insert language into a statute, as '[d]oing so would violate the cardinal rule of statutory construction that courts must not add provisions to statutes.' " (*Lateef*, *supra*, 45 Cal.App.5th at p. 253.)

Accordingly, we conclude that under the ordinary and commonsense meaning of "decision," in the context of the statutory framework and the adjudicatory nature of the review process, the Board's "decision" for purposes of section 22.240.060, subdivision E.4 occurred when it adopted the findings and approved the modified CUP with conditions on March 20, 2018.

It thus follows that although the Board may have "rendered" an indication of its intent to approve on August 1, 2017, when it passed the motion, it did not and could not "render" a "decision" until March 20, 2018, when it approved the CUP. The "usual, ordinary import" of the word "render" is to give "delivery or notice." (*Austin v. Dept. of Motor Vehicles* (1988) 203 Cal.App.3d 305, 309.)  In *Austin*, for purposes of a time limit that provided the Department of Motor Vehicles " 'shall render its decision within 15 days' " after conclusion of a driver's license suspension hearing, the court interpreted the "render" requirement "to be equivalent to the delivery or notice of the decision."  "Thus rendering judgment is accomplished only when the interested parties are advised of the decision.  This

construction comports with commonsense since a judgment has no meaning until it is related to the affected parties." (*Ibid.*)

We conclude that the Board rendered its decision for purposes of section 22.240.060, subdivision E.4 on March 20, 2018, when it adopted the findings, approved the modified CUP, and gave notice of its decision.. Because the Board's decision was rendered after 30 days of the close of the August 1, 2017 hearing, we conclude it acted outside the mandatory time limits of section 22.240.060 and the Commission's previous decision shall be deemed affirmed.

Because we find reversal is supported on this basis, we need not address Tran's arguments that the Board failed to state specific reasons for its modifications, and that the trial court's findings are not supported by substantial evidence and do not support the decision.

## III. Prejudicial Error

The County contends that even if the Board's decision was untimely, the error was not prejudicial because the result for Tran was the same as if the Board had rendered its decision within 30 days. "[E]ven a lack of literal compliance with a mandatory duty may be harmless error, so long as the record affirmatively reflects that the protections intended to be afforded to private parties through the exercise of that duty has been otherwise provided." (*Guardianship of Christian G.* (2011) 195 Cal.App.4th 581, 608.)

Tran must establish prejudice under both Code of Civil Procedure section 1094.5, subdivision (b) and Government Code section 65010. As already set forth, we review the Board's decision to determine "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair

trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."  (Code Civ. Proc., § 1094.5, subd. (b).)

Government Code section 65010, subdivision (b) (pertaining to prejudicial errors in zoning and planning matters) provides: "No action, inaction, or recommendation by any public agency or its legislative body or any of its administrative agencies or officials on any matter subject to this title shall be held invalid or set aside by any court on the ground of the improper admission or rejection of evidence or by reason of any error, irregularity, informality, neglect, or omission (hereafter, error) as to any matter pertaining to petitions, applications, notices, findings, records, hearings, reports, recommendations, appeals, or any matters of procedure subject to this title, unless the court finds that the error was prejudicial and that the party complaining or appealing suffered substantial injury from that error and that a different result would have been probable if the error had not occurred. There shall be no presumption that error is prejudicial or that injury was done if the error is shown."  (See *Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 921 [section 65010, subdivision (b) "is a 'curative statute' enacted by the Legislature for the purpose of 'terminating recurrence of judicial decisions which had invalidated local zoning proceedings for technical procedural omissions' "].)

The County misapprehends the relevant inquiry in this case.  The error complained of is not the Board's failure to issue its decision within 30 days, but the Board's erroneous issuance of

a decision *after* 30 days.  Once 30 days had passed, under the self-executing "failure to act" provision the Commission's decision, with its more favorable conditions for Tran's business, should have been deemed affirmed, and the grant of the CUP would have become effective as of that date.  Instead, over six months later the Board issued its final decision approving the modified CUP, adding new container size limits and reducing Tran's permitted hours of alcohol sales from 20 hours per day under the Commission's decision to only 12 hours per day under the Board's decision.  A different result more favorable to Tran hence would have been probable if the error had not occurred.  Tran also suffered prejudicial delay in finalizing the approval of his CUP, and suffered substantial injury in the form of the imposition of a modified CUP that decreased his alcohol sales hours by 40 percent.  We conclude that the error was not harmless, and that Tran met his burden to establish prejudice, substantial injury, and the probability of a different result.

## DISPOSITION

The judgment of the trial court is reversed and the matter is remanded with directions to issue a writ of mandate vacating the Board of Supervisors' decision and deeming the Regional Planning Commission's decision affirmed in accordance with this opinion. Appellant Tran is awarded his costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.